Orlan NELSON, Diane Nelson, and Kristen C. Nelson, a minor, and Orlan Nelson as guardian ad litem for Kristen C. Nelson, a minor, Plaintiffs, Appellees, and Cross–Appellants,

v.

TRINITY MEDICAL CENTER, Defendant, Appellant, and Cross–Appellee.

Civ. No. 870084.

Supreme Court of North Dakota.

Feb. 11, 1988.

Richard H. McGee II, of McGee, Hankla, Backes & Wheeler, P.C., Minot, for plaintiffs, appellees, and cross-appellants.

William P. Studer (argued), Michael J. Vanselow, and Michael C. Connelly, of Oppenheimer, Wolff & Donnelly, St. Paul, Minn., and Robert S. Rau, of Bosard, McCutcheon & Rau, Ltd., Minot, for defendant, appellant, and cross-appellee.

William P. Zuger, of Zuger, Kapsner & Blazer, Bismarck, for amici curiae Michael T. Vandall, M.D., David MacDonald, M.D., P.C., and St. Paul Fire and Marine Ins. Co.

VANDE WALLE, Acting Chief Justice.

Trinity Medical Center (Trinity) appealed from a judgment and a judgment on remittitur awarding damages to Orlan Nelson, Diane Nelson, and Kristen Nelson (plaintiffs) pursuant to a jury verdict. The plaintiffs have also filed a cross-appeal. We affirm.

This is a medical negligence suit arising from the birth of Kristen Nelson in Trinity Medical Center of Minot, North Dakota. Kristen Nelson was born on November 20, 1982. She is the daughter of Diane Nelson and Orlan Nelson, who also acts as her guardian ad litem.

Diane Nelson's labor began with the onset of contractions at approximately 12:45 p.m. on November 20, 1982. The Nelsons left their home in Beulah, North Dakota, for Minot approximately one hour later. Diane Nelson testified that during the drive to Minot the frequency of her contractions increased in a rapid manner, and that she began to experience severe abdominal pain and tightness in her stomach.

Upon arriving at Trinity at approximately 4 p.m. the Nelsons informed the nursing staff of what had occurred during the drive to Minot. Diane Nelson was then placed in a room. From the time she was placed in a room until shortly after 5 p.m. when an emergency Caesarean section was performed, Diane Nelson was under the supervision of Trinity's nurse, Susan Orr.

Diane Nelson's pregnancy was managed by Dr. Michael Vandall and Dr. David MacDonald. They had left standing orders that all their patients were to be placed on a continuous fetal heart-rate monitor. Such a monitor was not placed upon Diane Nelson until approximately 5:07 p.m. This occurred even though Dr. Vandall had discussed the use of such a monitor with Nurse Orr. Nurse Orr testified that she did not place a monitor upon Diane Nelson because she believed both of Trinity's monitors to be in use. Nurse Orr admitted that she did not look for a monitor. There was evidence offered that one of the monitors was not in use during that time. When a monitor was placed upon Diane Nelson it indicated that the child was in fetal distress and an emergency Caesarean section was then performed.

Kristen Nelson was born by the emergency Caesarean section. She was born severely brain-damaged. There was evidence that she will require extensive therapy and nursing-home care, that she will achieve an IQ of only 10 or 15, that she will always have to be fed through a stomach tube, and that she will never gain control over even her basic bodily functions.

It was the theory of the plaintiffs that the brain damage was caused by a placental abruption—a separation of the umbilical cord from the uterine wall causing a loss of oxygen via the blood supply to the child. There was evidence that a placental abruption could have been diagnosed by a fetal heart-rate monitor or through the physical manifestations of Diane Nelson.

The original complaint included Doctors Vandall and MacDonald as defendants in this suit. However, an out-of-court settlement was reached between them and plaintiffs, prior to trial.

The case went to trial with Trinity as the sole defendant. The jury returned a verdict awarding the plaintiffs $7,080,454.18. Trinity then filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. The trial court refused to grant a judgment n.o.v., but agreed to grant a new trial unless the plaintiffs entered a remittitur of certain damages. The plaintiffs entered a remittitur and a judgment was issued awarding them $5,680,454.18.

Trinity has appealed, alleging that the trial court committed certain errors during the course of the trial. The plaintiffs have filed a cross-appeal to challenge the trial court's award of a new trial unless the plaintiffs entered a remittitur of certain damages.

## I

■ Initially we note that although Trinity appealed from the judgment and the judgment on remittitur, prior to this appeal Trinity moved for a new trial. By moving for a new trial Trinity restricted itself on appeal to those issues raised in its motion for a new trial. As we stated in *Andrews v. O'Hearn*, 387 N.W.2d 716, 728 (N.D. 1986):

"Plaintiffs' objection to the instruction is also waived because they failed to raise this issue in their motion for a new trial. 'It is well settled that where a motion for a new trial is made in the lower court the party making such a motion is limited on appeal to a review of the grounds presented to the trial court.' *Zimbelman v. Lah*, 61 N.D. 67, 237 N.W. 207, 208 (1931). This restriction of appealable issues applies not only to review of a denial of the motion for a new trial, but also to the review of the appeal from the judgment itself or from a denial of a motion for judgment notwithstanding the verdict." [Footnote omitted.]

Thus, when Trinity moved for a new trial it restricted itself on any later appeal to those issues raised in the motion.

In this case one of the issues Trinity attempts to raise was not raised in its motion for a new trial. This issue is whether error was committed by the trial court in not disclosing the terms of the physicians' settment agreement to the jury.

In attempting to raise this issue Trinity points out language from our opinion in *Davis v. Davis*, 268 N.W.2d 769, 771 (N.D. 1978). Therein we stated:

"When a party appeals from an order denying a new trial, the review in this court is limited to those grounds which were presented to the district court. However, when there is an appeal from the judgment, the appeal is not limited to those issues raised in a motion for a new trial. All issues which were properly preserved at the trial and raised on appeal are reviewable."

It must be noted that in making this statement we cited no prior decisions of this court supporting this conclusion. However, as we stated in *Andrews*, the rule that a party moving for a new trial is restricted on appeal to the issues raised in that motion has been applied throughout, and prior to, our Statehood:

"This long-standing rule is derived from our Territorial laws. 1887 Dakota Territory Sess. Laws ch. 21, codified at 1887 Territory of Dakota Code of Civil Procedure § 5094. The statute has been subject to subsequent recodification and changes in language, but its essence, as well as its application, has remained constant over the years. See, e.g., *Lindenberg v. Folson*, 138 N.W.2d 573 (N.D. 1965); *Umphrey v. Deery*, 78 N.D. 211, 48 N.W.2d 897 (1951); *State v. Empting*, 21 N.D. 128, 128 N.W. 1119 (1910)." 387 N.W.2d at 728 (footnote 18).

Thus the law in this State is that a party who moves for a new trial is restricted on appeal to those issues raised in the motion for new trial. Therefore, insofar as our decision in *Davis v. Davis* stands for the proposition that a party who moved for a new trial may raise issues on appeal other than those made in the motion for new trial, it is overruled.

■ Because Trinity failed to raise the above-specified issue in its motion for new trial, it may not raise it on appeal. However, even if Trinity had properly raised the issue of whether the trial court erred in not disclosing the terms of the physicians' settlement agreement to the jury, we believe the issue is without merit. Just prior to trial the trial court ruled that neither party was to refer to the settlement agreement without first consulting with the court. But the trial court also indicated that reference to the settlement agreement could be made at appropriate times in the trial. The trial court stated:

"Let's do it this way. I will make a ruling that without further specific authority from the Court that neither party is to refer to the fact that the doctors have settled out of the case. Now this isn't an absolute ban because obviously that can change when you get to the appropriate place in the trial such as your cross-examination of the doctor or if there is some other place where you feel, either of you feel it might be appropriate to bring it up then let's take a break and talk about it. So understand that it's not an absolute ban but before it's brought up let's discuss it out of the presence of the jury."

Thus it is clear that the trial court did not prohibit Trinity from introducing evidence concerning the settlement agreement; it only restricted the use of such evidence to an appropriate time during the trial. The fact that Trinity failed to later seek to introduce evidence of the settlement agreement at an appropriate time does not equate with a failure of the trial court to disclose the terms of the settlement agreement.

II

■ Trinity also claims that the trial court erred in refusing to submit a special verdict form to the jury directing it to determine the respective negligence of the physicians, who had reached an out-of-court settlement with the plaintiffs prior to trial. Plaintiffs urge us to not consider this issue, arguing that Trinity failed to raise this issue in its motion for a new trial and is therefore precluded from raising it on appeal. Plaintiffs do acknowledge that Trinity argued in its motion for new trial that the trial court erred in not giving special verdict forms and interrogatories to the jury in general. One of those interrogatories asked the jury to apportion negligence. A question may exist as to whether Trinity is allowed to raise on appeal the specific issue regarding the trial court's failure to direct the jury to determine the physicians' negligence as was requested in a proposed interrogatory to the jury, when Trinity argued only generally that the trial court erred in failing to give all of Trinity's proposed interrogatories in the motion for new trial, but we need not consider it. If Trinity had adequately raised and preserved this issue, it failed to offer at trial evidence to prove the physicians' negligence.

This court considered the question of whether a jury should be instructed to consider the negligence of a released tort-

feasor in *Bartels v. City of Williston,* 276 N.W.2d 113 (N.D.1979). In *Bartels* we determined that the jury should consider the negligence of the released tortfeasor, stating:

"... the fact finder shall determine the percentage of negligence attributable to the released tortfeasor as well as the percentage attributable to the remaining tort-feasors (defendants)." 276 N.W.2d at 122.

However, in order that the jury may consider a tortfeasor's negligence there must be evidence presented on the issue of that tortfeasor's negligence. In this case the evidence regarding negligence focused on whether Nurse Orr's conduct reached the appropriate standard of care for a nurse. Evidence was not offered as to the conduct of the doctors and the appropriate standard of care for a doctor under the circumstances of this case. A refusal of a jury instruction which is not supported by the evidence is not error. *Van Ornum v. Otter Tail Power Company,* 210 N.W.2d 188 (N.D. 1973).

### III

■ Trinity argues that the trial court erred in failing to give Trinity's requested jury instruction regarding the "captain of the ship" doctrine. That instruction provided:

"You are instructed that if you find that the Plaintiff was injured as a result of the negligence of a nurse, you must then determine whether the Defendant Hospital or physician is liable for that negligence.

"The Defendant Hospital is liable for the negligence of a nurse if that person was acting as the agent and employee of the Defendant Hospital and within the course and scope of her employment at the time of the negligent act or omission complained of.

"The Defendant physician is liable for the negligence of a nurse if that person is acting in the business of and under the direction of the physician at the time of the negligent act or omission complained of.

"A person may be the servant of two masters, not joint employers, at one time as to one act, if the service to one does not involve abandonment of the service to the other."

The basis for this instruction lies in the fact that Dr. Vandall briefly examined Diane Nelson on two occasions between 4 p.m. and 5 p.m. of the day in question. Those examinations lasted between one and two minutes each. Subsequently the doctor issued several orders to Nurse Orr: that she continue to assess Diane Nelson, that she admit Diane Nelson to the hospital, that she begin an I.V. on Diane Nelson, that she give Diane Nelson certain medications for pain, and that she assess fetal heart tones.

In previously discussing the captain-of-the-ship doctrine we have stated that it is grounded on principles of agency and that:

"The essential question is whether one is subject to the control of another not only to the work to be done but also the manner of performing it.... [T]he master must have control not only over the agent but over the work and the performance thereof before liability can be extended to him." *Schwartz v. Ghaly,* 318 N.W.2d 294, 300–301 (N.D.1982), quoting *Grubb v. Albert Einstein Medical Center,* 255 Pa.Super. 381, 387 A.2d 480, 487 (1978).

We do not believe that the performance of routine medical tasks by a nurse pursuant to a doctor's orders presents a case wherein the doctor has the right to control the manner of performance to such an extent as to subject him to liability for the nurse's actions. Rather, a doctor's liability under the captain-of-the-ship doctrine should attach only where a nurse is under a doctor's direct control, such as in the operating room, or where a nurse is carrying out a doctor's orders which are technical in nature and require the doctor's supervision.

An excellent discussion of this type of rule was provided by the Minnesota Su-

preme Court in *Swigerd v. City of Orton-ville*, 246 Minn. 339, 75 N.W.2d 217, 220 (1956), wherein the court stated:

"The application of the [captain-of-the-ship doctrine] is free from difficulty where the actual control of the servant, or the right thereto, necessarily becomes vested in the surgeon when the nurse is assigned to assist him during the actual performance of an operation over which he must have exclusive direction or where the nurse is administering a prescribed treatment under the direct and personal supervision of the physician. Difficulty in the application of the rule arises primarily with respect to acts performed by hospital employees either before or after an operation, or performed in the course of administering medical treatment prescribed by a physician who is not present to give personal supervision.

"Whether the assignment by the hospital of one of its nurses to the care of a patient involves a surrender of control to the attending physician so that the hospital ceases to be responsible for the negligent acts of the nurse can best be ascertained in the light of the recognized function of a modern hospital and the generally accepted limitations on a physician's time. A physician can spend only a short time at the bedside of each patient and he must therefore leave the actual fulfillment of his prescribed treatment to others less skilled. If this were not the accepted practice, no person of moderate means could afford to employ either a specialist or a general practitioner. A patient enters a hospital in reliance upon the reasonable assumption that its trained staff of nurses, its responsible supervision, and its special equipment will insure him a higher standard of care in administering to his needs as his physician may prescribe. If this assumption were not justifiable, the patient might just as well stay at home during his illness. Clearly, a hospital has a greater responsibility for the welfare of its patients than merely to maintain a pool of

trained nurses from which the various attending physicians may select their assistants." [Footnotes omitted.]

Because of these circumstances the Minnesota Supreme Court concluded:

"... a hospital is liable for the negligence of its nurses in performing mere administrative or clerical acts, which acts, *though constituting a part of a patient's prescribed medical treatment*, do not require the application of the specialized technique or the understanding of a skilled physician or surgeon." [Emphasis in original.] 75 N.W.2d at 222.

Under this rule:

"Routine acts of treatment which an attending physician may reasonably assume will be performed in his absence by nurses of a modern hospital as part of their usual and customary duties, and the execution of which does not require specialized medical knowledge, are merely administrative acts for which negligence in their performance is imputable to the hospital." 75 N.W.2d at 222.

This type of rule recognizes that there are certain situations where a doctor's control and supervision of a nurse are so great that he should be made liable for the nurse's actions, e.g., in the operating room. Yet it recognizes that in most instances where a nurse acts—even under a doctor's orders—the nurse acts independently of the doctor. As one Illinois court has stated:

"A nurse is still subject to the rules and regulations of the hospital, and the doctor may not gainsay them. She may be discharged by the hospital but not by the doctor. The hospital, not the doctor, furnishes the equipment that the nurse uses, and she is paid by the hospital. We conclude, therefore, that the employees of the hospital assisting a surgeon remain the employees of the hospital even though the surgeon retains some degree of control over them.

"We do believe, however, that analogous authority supports the general rule that a doctor may be held liable for the

negligence of a hospital employee who is subject to the doctor's control or supervision." [Citations omitted.] *Foster v. Englewood Hospital Association,* 19 Ill. App.3d 1055, 313 N.E.2d 255, 260 (1974).

Thus the captain-of-the-ship doctrine should be applied only in cases where a doctor who is working in a hospital has direct control over a nurse's actions, such as in the operating room, or where the doctor personally supervises a nurse's performance of a technically complicated treatment. The doctrine should not be applied where the nurse performs routine tasks even though done pursuant to a doctor's orders. See, e.g., *Elizondo v. Tavarez,* 596 S.W.2d 667 (Tex.Civ.App.1980) [holding that a doctor who ordered the insertion of a tube down a patient's throat was not liable when a nurse negligently inserted that tube].

In this case Trinity offered no evidence that Nurse Orr was under Dr. Vandall's direct control or supervision, only that she performed routine tasks pursuant to his orders. Thus the trial court properly refused to give the requested jury instruction on the captain-of-the-ship doctrine. As we have stated previously, "A refusal of an instruction which is inapplicable under the evidence is not error." *Austinson v. Kilpatrick,* 105 N.W.2d 258 (N.D.1960).

### IV

■ Trinity next claims that the trial court erred in excluding expert testimony concerning the cause of Kristen Nelson's injuries. At trial Trinity offered into evidence the deposition of Dr. Loren Peterson. The trial court excluded those portions of the deposition in which Dr. Peterson discussed the cause of Kristen Nelson's injuries. The trial court did so because it believed the testimony was not based upon a reasonable medical certainty, but upon speculation and guesswork.

In analyzing the question of whether the trial court erred in excluding this expert testimony we note that "The determination to admit or not to admit expert testimony under Rule 702, N.D.R.Ev., rests within the sound discretion of the trial court, and its determination will not be reversed on appeal unless the court has abused its discretion." *South v. National R.R. Passenger Corp.,* 290 N.W.2d 819, 831 (N.D.1980); see also *Weinstein's Evidence* § 702[02], 1987.

The rule regarding expert testimony in a medical context is that "A medical expert is qualified to express an opinion to a medical certainty, or based on medical probabilities only, but not an opinion based on mere possibilities." *Vaux v. Hamilton,* 103 N.W.2d 291, 295 (N.D.1960). Thus expert testimony in a medical context "must address definite probabilities, and not involve, to an excessive degree, the element of speculation or conjecture." *VanVleet v. Pfeifle,* 289 N.W.2d 781, 784 (N.D.1980).

After reviewing the deposition of Dr. Peterson it appears to this court that he was testifying that he strongly believed that a blood clot found in an artery of the umbilical cord affected Kristen Nelson prior to the time of birth, but that there had been too little research done in the medical community to be able to know what effect such a clot had on the child. It also appears that Dr. Peterson testified as to the possible causes of the injury, identifying both an abruption and the clot as such. This testimony seems highly speculative. Because a medical expert must testify as to definite probabilities, not merely conjecture and speculation, we cannot say that the trial court's exclusion of this evidence was an abuse of discretion. Therefore, no error was committed.

### V

■ Finally, Trinity claims that the trial court erred in excluding evidence, as barred by the collateral-source rule, concerning government benefits Kristen Nelson will be eligible to receive.

The collateral-source rule is designed to prevent tortfeasors from advantaging from payments made to an injured party because

of his injury by sources independent of the tortfeasors. We recently discussed the collateral-source rule in *Keller v. Gama*, 378 N.W.2d 867 (N.D.1985). In *Keller* we noted that in an earlier decision this court had determined that a negligent defendant is

"responsible for the damages, and he cannot take advantage of the fact that someone may have repaired the truck without charge, or that some friends may have contributed to the cost, or that some dealer may have been generous enough to give plaintiff a brand new truck in place of the old one." 378 N.W.2d at 868, quoting *Ostmo v. Tennyson*, 70 N.D. 558, 296 N.W. 541, 545 (1941).

We noted that ours is a broad interpretation of the collateral-source rule, and that under it a

"wrongdoer should not benefit at the expense of an innocent party, even where the injured party subsequently receives reimbursement from someone other than the wrongdoer. If an injury has occurred it is subject to specific remuneration." 378 N.W.2d at 868.

Thus it is clear that under our interpretation of the collateral-source rule a tortfeasor never should profit when an injured party receives assistance from an independent source.[1]

Trinity argues that this court should not apply the collateral-source rule to government benefits. We do not believe our interpretation of the collateral-source rule should change solely because the independent source is the State. This is especially true where, as here, the benefits have not yet been received, but may be utilized in the future. If a plaintiff is not allowed to recover his total amount of damages from a tortfeasor, he may well be forced to look to the State for assistance. However, if the plaintiff is allowed to recover from the tortfeasor, he will not need to rely upon the State.

In summary, a tortfeasor will not be allowed to profit from financial assistance given to an injured party by an independent source. See, e.g., *South v. National R.R. Passenger Corp., supra*, 290 N.W.2d at 841, holding that a plaintiff could recover the reasonable value of medical care even though such was gratuitously provided by his wife. Therefore, the trial court did not err in excluding evidence of government benefits available to Kristen Nelson.

VI

On cross-appeal plaintiffs argue that the trial court erred in granting Trinity a new trial unless the plaintiffs agreed to a remittitur of certain damages. The trial court granted Trinity a new trial subject to the alternative of plaintiffs' remitting portions of the damages awards for (1) the future disability of Kristen Nelson, (2) the pain and suffering of Kristen Nelson, and (3) the pain and suffering of Diane Nelson, which resulted in a reduction of the jury verdict from approximately $7,080,000 to approximately $5,680,000.

Rule 59 of the Rules of Civil Procedure governs new trials. Under Rule 59(b)(5) a new trial may be granted where:

"Excessive damages appearing to have been given under the influence of passion or prejudice, but when a new trial is asked for on this ground and it appears that the passion and prejudice affected only the amount of damages allowed and did not influence the findings of the jury on other issues in the case, the trial court, on hearing the motion, and the supreme court, on appeal, may order a reduction of the verdict in lieu of a new trial or order that a new trial be had unless the party in whose favor the verdict was given remits the excess of damages; . . ."

In considering a challenge to the trial court's action in granting a motion for new

---

1. We note that Section 32–03.2–06, N.D.C.C., allowing the party responsible for paying an award of economic damages to apply to the court for a reduction of damages to the extent that the economic damages presented to the trier of fact are covered by payment from a collateral source, applies only to claims for relief which accrued after the effective date of the statute, July 8, 1987. See 1987 N.D.Sess.Laws Ch. 404, Sec. 14.

trial we note that "the trial court's action in granting such a motion will not be disturbed on appeal unless a manifest abuse of discretion is shown." *Cook v. Stenslie,* 251 N.W.2d 393, 395 (N.D.1977). We further note that a "stronger showing is required to reverse the granting of a new trial than to reverse an order denying a motion for a new trial." 251 N.W.2d at 396.

In this case plaintiffs argue that the trial court impermissibly substituted its own judgment for that of the jury, thus acting as a "thirteenth juror." Plaintiffs claim this violates the tenet that "The fact that a verdict in a case of this kind is more than the court believes is justified does not entitle the court to substitute its judgment for that of the twelve jurors selected to try the case." *Skjonsby v. Ness,* 221 N.W.2d 70, 76 (N.D.1974). Plaintiffs argue that this is shown by the trial court's statement in its memorandum opinion that "No matter what the jury's reasoning, the award of non-economic damages was too high." We reject plaintiffs' argument.

A review of the trial court's memorandum opinion indicates that the trial court knew that it was not allowed to set aside a verdict merely because it is large. As the trial court stated, "... compensation is for the jury to determine and a trial judge ought not merely substitute his opinion for that of the jury."

We think that one could easily determine that passion and prejudice influenced the jury in this case. Although the trial court stated that it did not agree with "Trinity's contention that the jury's reasoning has been pervaded by passion," it did state that a "natural sympathy may well have existed." In fact, the trial court noted that Kristen Nelson's injuries "are the most devastating that I have observed." The trial court also noted that the jury verdict may have been influenced because of "accumulated frustration over the extensive damages caused by hospital staff's inattention to a physician's simple directive."

We have previously noted:

"In determining on appeal whether [a] verdict was motivated by passion or prejudice, 'passion' means moved by feelings or emotions, or may include sympathy as moving influence without conscious violation of duty, 'prejudice' includes forming of opinion without due knowledge or examination. *Valdez v. Glenn,* 330 P.2d 309, 312, 79 Wyo. 53." *Skjonsby,* 221 N.W.2d at 77, quoting 31A *Words and Phrases* at 96–97 and 1974 pocket part at 8 (1957).

In view of the facts of this case and the trial court's statements in regard to them— e.g., the severity of the injuries to this child, the sympathy engendered in the jury, and the possible anger at the hospital—we cannot say that the trial court abused its discretion in granting Trinity's motion for a new trial or a remittitur instead.

### CONCLUSION

The judgment and the judgment on remittitur are affirmed.

GIERKE, J., VERNON R. PEDERSON, Surrogate Justice, and HUNKE and MEDD, District Judges, concur.

VERNON R. PEDERSON, Surrogate Justice, and HUNKE and MEDD, District Judges, sitting in place of ERICKSTAD, C.J., and MESCHKE and LEVINE, JJ., disqualified.