1997 ND 113

**John MERTZ, Jr., Plaintiff and Appellee,**

v.

**Louise ARENDT, Darlene Hankison, Leeland Mertz, Lawrence Mertz, Marvin Mertz, Jarred Schmitt, Clifford C. Grosz, personal representative of the estate of John Mertz, Sr., Defendants and Appellants,**

**unknown heirs and devisees of Luise Stadelman, deceased, unknown heirs and devisees of Emilie H. Mertz, deceased, unknown heirs and devisees of John J. Mertz, deceased, and all other persons unknown claiming any estate or interest in or lien or encumbrance upon the property described in the Complaint, Defendants.**

Civil No. 960301.

Supreme Court of North Dakota.

June 3, 1997.

Thomas J. Aljets, of Heinley & Aljets, Carrington, for plaintiff and appellee.

Walter M. Lipp, McClusky, and Clifford C. Grosz (appearance), Harvey, for defendants and appellants.

VANDE WALLE, Chief Justice.

[¶1] Louise Arendt, Darlene Hankison, Leeland Mertz, Lawrence Mertz, Marvin Mertz, Jarred Schmitt, and Clifford Grosz, personal representative of the estate of John Mertz, Sr., appealed from a judgment quieting title to approximately 240 acres of Wells County farmland in John Mertz, Jr. We conclude the trial court's finding John Mertz, Jr., acquired the property through an executed parol gift from his parents is not clearly erroneous, and we affirm the judgment.

[¶2] John Mertz, Jr., is the youngest of six children born to John Mertz, Sr., and Emilie H. Mertz, both now deceased. Part of the disputed property was owned by John Sr. and Emilie as joint tenants and the other part was owned solely by Emilie. John Sr. farmed the land until sometime in the 1940s. After John Sr. quit farming the land, John Jr.'s older brother, Lawrence, farmed it, except during a two-year period while he served in the armed forces. In 1957 Lawrence married and moved to Fessenden. John Jr. then began farming the land.

[¶3] According to John Jr., in 1958 or 1959, while he was still a teenager, his parents verbally gave him the disputed property. John Jr. testified:

"A. Well, I stayed home and I, my other brothers, they went out and they worked for everybody else and I spent more time at home with my folks and that there and I guess being I was a boy and my dad wanted the land to stay in the Mertz name all the time so they, my dad and mother give me the land."

John Jr. never received a deed to the property from John Sr. or Emilie, because, according to John Jr., his father told him he would receive a tax deed to the property if he paid the taxes.

[¶ 4] John Sr. and Emilie continued to live in a house on the farmstead and John Sr. began drilling wells for an occupation. They lived there until 1973 or 1974. Emilie died in 1974 and John Sr. died in 1993. John Jr. lived on the farm with his parents until 1962, when he married and moved to Hurdsfield. John Jr. continued to farm the land from the time of the alleged gift until the spring of 1994, when the personal representative of John Sr.'s estate took possession.

[¶ 5] At the time of John Sr.'s death, it was discovered the family had done nothing to update record title ownership of the disputed property for almost 70 years. When this action was started, record title ownership of part of the property remained in Luise Stadelman, Emilie's mother, who died in 1929. That property passed to Emilie as Luise's sole surviving heir. Upon Emilie's death and under a probate court order, the record title ownership of that part of the property was finally listed as an undivided one-half interest in John Sr.'s estate, and an undivided one-twelfth interest in each of the six children. The record title ownership of the remainder of the property showed John Sr. and Emilie as joint tenants. With the property passing to John Sr. upon Emilie's death, record title ownership was changed to show John Sr.'s estate as the record owner of that part of the property.

[¶ 6] Following a bench trial, the trial court quieted title to all of the disputed property in John Jr. The trial court concluded John Sr. and Emilie "by their actions, had, in 1958 or 1959, executed a parol[ ] gift" of the property to John Jr. The court also concluded, even if it was not established by clear and convincing evidence that John Sr. and Emilie executed a parol gift of the property, "the facts in this case and the provisions of" N.D.C.C. Chapters 47–06 and 28–01 "establish clear and convincing evidence that [John Jr.] had acquired title by occupancy by adverse, actual, visible, continuous, notorious, distinct, and hostile possession of the property." The de-fendants and appellants are John Jr.'s brothers and sisters, the personal representative of John Sr.'s estate, and the person who leased the property from the estate.

[¶ 7] The dispositive issue in this case is whether the trial court erred in ruling John Jr. acquired title to the disputed property through an executed parol gift from his parents.

[¶ 8] This Court long ago ruled the statute of frauds, codified in N.D.C.C. §§ 9–06–04 and 47–10–01, will not defeat a parol gift of real property.

"The fact that the gift was by parol does not necessarily avoid it. Where a vendee is placed in possession of land under a contract of sale, makes valuable improvements, and pays part of the purchase price, the fact that the requirements of the statute of frauds were not complied with in making the contract will not defeat an action for the specific performance thereof. . . . There is no good reason why a gift should not be subject to the same rules as a sale, and the cases so hold. . . . Thus where under a parol gift of land the donee takes possession and makes improvements in reliance on the gift so it would work a substantial injustice to hold the gift void, the transaction is taken out of the statute of frauds."

*Heuer v. Heuer,* 64 N.D. 497, 253 N.W. 856, 858–859 (1934) (citations omitted).

[¶ 9] The party claiming land under an executed parol gift has the burden of proving each element of a valid gift. *Hagerott v. Davis,* 73 N.D. 532, 17 N.W.2d 15 (1944). Where, as here, a claim is asserted after the death of the donor, proof of each element must be by clear and convincing evidence. *Schrank v. Meade,* 145 N.W.2d 514 (N.D.1966). Our review of a trial court's finding whether a valid parol gift of land has occurred is governed by the "clearly erroneous" standard of N.D.R.Civ.P. 52(a). *Lindvig v. Lindvig,* 385 N.W.2d 466 (N.D.1986). A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if this Court is left with a definite and firm conviction that a mistake has been made. *Endre-*

*sen v. Scheels Hardware and Sports,* 1997 ND 38, ¶ 8, 560 N.W.2d 225.

[¶ 10] The trial court's finding John Jr. acquired the property by an executed parol gift from his parents in 1958 or 1959 is supported not only by John Jr.'s testimony, but by permissible inferences the trial court could have drawn from other evidence in the record. John Jr. was the only person who possessed and farmed the tillable land from the late 1950s until the personal representative took the land from him in 1994. John Jr. also possessed the pasture land except for two years in the early 1970s when he traded with his brother for other pasture land. John Jr. possessed the farmsite with the exception of the house, where his parents lived until 1973 or 1974. When they left, he fenced the farmsite into the pasture. John Jr.'s allowing his parents to live in the house while he farmed the land is not necessarily inconsistent with his having been given the property as a gift. *Cf. Houdek v. Ehrenberger,* 397 Ill. 62, 72 N.E.2d 837, 840 (1947) (where parent deeds property to child, the facts that "the parent occupied the premises, paid taxes and made improvements, although some evidence of the absence of an intention to make a gift, are neither sufficient to overcome the presumption of a gift nor inconsistent with the theory of an advancement").

[¶ 11] John Jr. paid all of the real estate taxes during the years he farmed the land. Although his parents were listed in tax records as having paid the taxes some years, the trial court found John Jr. reimbursed them for those payments. John Jr. also insured the property and listed himself as the owner. John Jr. paid no rent for use of the property and took the farm products and proceeds including all government farm program payments connected with the property. John Jr. was listed as the "owner" and "operator" of the property in ASCS records. John Jr. negotiated with a Department of Transportation representative regarding fence and driveway easements.

[¶ 12] John Jr. treated the property as his own and made a number of improvements. He picked rocks, buried rock piles, and drained sloughs. He rebuilt the fence on the pasture land, built a dam at a cost of approximately $6,000, rebuilt a well, placed a water tank on the property, and reshingled a granary. All of this was done without anyone's consent, approval or supervision.

[¶ 13] Moreover, only after John Sr. died and it was discovered John Jr. had not received a deed to the property did anyone dispute John Jr.'s ownership of the property. John Jr.'s sister, who handled John Sr.'s affairs while he received nursing home care, certified in five annual medical assistance reviews that John Sr. did not own the land and received no rental income from it. In Social Security Administration documents, John Sr. also certified he did not own the land in question or receive any rental payments from it. In view of the state of the record title, it simply appears this family was not overly concerned about the formalities of record title.

[¶ 14] The defendants argue, however, that avoidance of the gift will not work a substantial injustice because John Jr. did not use the property as his homestead. *Heuer* involved homestead property, and the court partially relied on this fact in finding substantial injustice. But, we decline to hold a substantial injustice can occur only if homestead property is the subject of the gift. Neither the case law nor logic dictate such a distinction. Certainly, substantial injustice can occur when a donee makes valuable and permanent improvements to non-homestead property. *Compare Vasichek v. Thorsen,* 271 N.W.2d 555 (N.D.1978) (where vendee constructed permanent grain bins on non-homestead property, summer-fallowed the land, and improved drainage ditches, evidence was sufficient to show partial performance of an oral contract to remove the transaction from the statute of frauds). The improvements found by the trial court to have been made by John Jr. in this case were valuable, substantial and permanent, and were made in reliance on the gift.

[¶ 15] The defendants point to evidence they presented at trial, which, if believed by the court, would support their contention no valid parol gift of the property occurred in this case. But it would serve no useful purpose to detail that evidence. We do not reexamine findings of fact made by

the trial court on conflicting evidence, and a choice between two permissible views of the weight of the evidence is not clearly erroneous. *Matter of Estate of Nelson,* 553 N.W.2d 771 (N.D.1996). There was clear and convincing evidence to support the trial court's view that a parol gift of the property occurred in 1958 or 1959.

[¶ 16] We conclude the trial court's finding John Jr. received the disputed property through an executed parol gift from his parents is not clearly erroneous. It is unnecessary to address the trial court's alternative theory of adverse possession to quiet title in John Jr.

[¶ 17] The judgment is affirmed.

[¶ 18] SANDSTROM, NEUMANN, MARING and MESCHKE, JJ., concur.