1998 ND 128

**Janet E. DONARSKI, Plaintiff and Appellee,**

v.

**Kenneth M. DONARSKI, Defendant and Appellant.**

**Civil No. 970379.**

Supreme Court of North Dakota.

June 30, 1998.

Alisha Lynn Ankers, Fargo, for plaintiff and appellee.

Monty G. Mertz, of Mertz Law Office, Fargo, for defendant and appellant.

NEUMANN, Justice.

[¶ 1] Kenneth Donarski appealed from a judgment of divorce, claiming the trial court committed numerous errors in dividing the marital property and in awarding child support and spousal support. We hold the court's findings underlying its award of post-

minority medical and college expenses for BethAnn are inadequate and the court must reconsider that issue. We affirm in part, reverse in part, and remand.

[¶ 2] Kenneth and Janet Donarski were married in 1974. Janet's daughter from a prior marriage, Amy, age 27, was adopted by Kenneth after he and Janet married. Kenneth and Janet also have two children of this marriage, Nathan, age 21, and BethAnn, age 16.

[¶ 3] Kenneth graduated from the University of North Dakota in 1975 with a bachelor's degree in social work. The family resided in Grand Forks where Kenneth worked first as a housing rehabilitation specialist and then as Director of the Grand Forks Housing Authority. In March 1992, Kenneth accepted the position of Director of the Fargo Housing Authority, and the family moved to Fargo. After receiving her high school diploma, Janet received one year of medical technical training and an additional year of junior college. Throughout the marriage Janet assumed various minimum wage part-time jobs while she was the primary homemaker and caregiver for the children.

[¶ 4] Irreconcilable differences developed in the marriage, and in December 1996 Janet filed for divorce. After a hearing, the court granted Janet a divorce, divided the marital property, awarded Janet custody of BethAnn and permanent spousal support, and awarded child support for BethAnn. Kenneth appealed.

I

[¶ 5] The trial court awarded Janet permanent spousal support of $400 per month until Kenneth's child support obligation for BethAnn terminates. Thereafter, the court awarded Janet spousal support of $750 per month until her death or remarriage. Kenneth asserts the court's award of permanent spousal support is clearly erroneous. Kenneth claims Janet can either seek further education to increase her earning potential or she can work full time selling Tupperware, a business she has engaged in part time throughout the marriage, to earn a satisfactory income.

[¶ 6] The trial court's determination on spousal support is a finding of fact which will not be set aside unless clearly erroneous. *Orgaard v. Orgaard*, 1997 ND 34, ¶ 5, 559 N.W.2d 546. Under this standard we reverse only if there is no evidence to support a finding or if, upon review of the entire evidence, we are left with a definite and firm conviction the trial court has made a mistake. *Id.* Under N.D.C.C. 14–05–24, the trial court is authorized to "compel either of the parties ... to make such suitable allowances to the other party for support during life or for a shorter period as to the court may seem just, having regard to the circumstances of the parties respectively." In determining the spousal support issue, it is appropriate for the court to consider the standard of living of the parties in a long-term marriage and the need to balance the burdens created by the separation when it is impossible to maintain two households at the pre-divorce standard of living. *Gronland v. Gronland*, 527 N.W.2d 250, 253 (N.D.1995). Permanent support is not limited to a spouse who is incapable of any rehabilitation, but may be awarded to a spouse incapable of adequate rehabilitation or self support. *Wiege v. Wiege*, 518 N.W.2d 708, 711 (N.D.1994). When there is substantial disparity between the parting spouses' incomes that cannot be readily adjusted by property division or rehabilitative support, it may be appropriate for the court to award indefinite permanent support to maintain the disadvantaged spouse. *Glander v. Glander*, 1997 ND 192, ¶¶ 17 and 18, 569 N.W.2d 262.

[¶ 7] The trial court made several findings in support of its award of permanent spousal support. The court found Janet, age 49, was in good health except for a back injury which restricted her lifting. At the time of the trial Janet was engaged in three part-time positions earning a total net monthly income of $490. Kenneth was earning, after deductions for taxes and the cost of BethAnn's health insurance, a net monthly income of $3,200. The court also found Kenneth had made inappropriate sexual advances toward the eldest daughter, Amy, which "justified [Janet's] unease with leaving the children in [Kenneth's] unsupervised care" and

"prevented [Janet] from pursuing more challenging careers." The court concluded:

> "Janet is in need of permanent spousal support due to her limited marketable job skills, limited job experience, and sparse employment history. Janet's income, even when viewed in the best possible light in the foreseeable future, will not reach the level which is expected to be enjoyed by Kenneth."

[¶ 8] The court, upon considering Janet's age, health, and work history, concluded Janet needs indefinite support. Janet's limited marketable job skills are the result, at least in part, of Kenneth's inappropriate sexual conduct toward Amy which necessitated Janet's close guarding of the children while in the home and prevented her from pursuing an outside career. The court also considered the substantial disparity in income between the parties. We are not left with a definite and firm conviction the trial court, under these circumstances, made a mistake. We conclude, therefore, the trial court's award of permanent spousal support is not clearly erroneous.

## II

[¶ 9] In its judgment, the trial court provided that Kenneth "shall be subject to an income withholding order for the payment of spousal support." Kenneth claims there is "no statutory or other authority" for the court to make such an order and it should be set aside.

[¶ 10] Under N.D.C.C. 14–09–09.11, a judgment or order requiring the payment of child support may be enforced by an income withholding order. *See Steffes v. Steffes*, 1997 ND 49, ¶ 16, 560 N.W.2d 888. Under N.D.C.C. 14–05–25.2, any order or judgment for the support of a spouse or former spouse may be "enforced in any manner provided for the enforcement of an order for the payment of child support under chapter 14–09...." We, therefore, find no error in the trial court making Kenneth's spousal support payments subject to an income withholding order.

## III

[¶ 11] The trial court required Kenneth to secure his spousal support obligation "with a life insurance policy or policies with a death benefit of not less than $50,000.00," making Janet the "sole beneficiary" of that insurance. The trial court also required Kenneth to secure his child support obligation for BethAnn with a $10,000 life insurance policy, naming BethAnn as the primary beneficiary of that insurance. Kenneth asserts the trial court had no authority to require him to secure his spousal support and child support obligations with life insurance.

[¶ 12] N.D.C.C. 14–05–25, provides, in relevant part:

> "The court may require either party to give reasonable security for providing maintenance or making any payments required under the provisions of this chapter and may enforce the same by appointment of a receiver or by any other remedy applicable to the case."

It is appropriate for the trial court to secure support obligations with life insurance, especially in circumstances as exist here, where the obligor has existing policies of insurance on his life and can designate the obligee the beneficiary of the insurance proceeds. *See Gierke v. Gierke*, 1998 ND 100, ¶ 49, 578 N.W.2d 522. We conclude the court did not err in securing Janet and BethAnn's support with life insurance.

## IV

[¶ 13] The trial court ordered Kenneth to make health insurance available to Janet "through COBRA for 3 years" and ordered Kenneth to pay for Janet's health insurance premiums until his child support obligation terminated. Thereafter, Janet is responsible for her health insurance premiums. The court also made Janet responsible for all of her medical care not covered by insurance. Kenneth asserts the trial court's order requiring him to pay for Janet's health insurance premiums is clearly erroneous.

[¶ 14] Under appropriate circumstances, the court can order one spouse to pay for the other's health insurance premiums as part of the spousal support obligation.

*See, e.g., Routledge v. Routledge*, 377 N.W.2d 542, 544–546 (N.D.1985). Considering the parties' disparate incomes and the availability of health insurance for Janet through Kenneth's employer, the trial court found it appropriate to require Kenneth to make health insurance available to Janet and to pay the premiums until Kenneth's child support obligation for BethAnn terminates. Kenneth has provided no persuasive authority or argument why, under these circumstances, the court's order is clearly erroneous. We are not left with a definite and firm conviction the trial court made a mistake imposing this limited health insurance obligation upon Kenneth for Janet.

### V

[¶ 15] The court ordered Kenneth to maintain health insurance for BethAnn. *See* N.D.C.C. 14–09–08.10. The court also ordered him to "pay all mental, physical, dental, orthodontal, and optometrist care not covered by insurance." Kenneth asserts the court's requirement that Kenneth pay for BethAnn's medical expenses not covered by insurance is clearly erroneous and without authority. The trial court's determination on child support is a finding of fact and will be affirmed unless it is clearly erroneous. N.D.R.Civ.P. Rule 52(a); *Harty v. Harty*, 1998 ND 99, ¶ 14, 578 N.W.2d 519. Under the child support guidelines, payments made by an obligor for the child's actual medical expenses are deducted from the obligor's monthly gross income for purposes of calculating the obligor's monthly support obligation. N.D. Admin. Code 75–02–04.1–01(7)(e); *see Withey v. Hager*, 1997 ND 225, ¶ 9, 571 N.W.2d 142. Kenneth does not assert as error that the trial court failed to deduct Kenneth's medical expense obligation for BethAnn in computing Kenneth's net monthly income. We conclude therefore, the court's requirement Kenneth pay BethAnn's uncovered medical expenses is not clearly erroneous.

### VI

[¶ 16] Kenneth asserts the trial court's award to him of $6,875 from BethAnn's credit bureau saving's account is clearly erroneous, because the account has a balance of only $133. The account was established to save funds for BethAnn's college education. Kenneth testified he used all but $133 of the funds for enhancements to the parties' home and for payment of Kenneth's attorney fees in this divorce action. The trial court's award states Kenneth "shall receive the proceeds from BethAnn's Credit Bureau's saving's account of $6,875.00 *or whatever remains therein.*" (Emphasis added.) We conclude the court's award is consistent with the evidentiary record and is not clearly erroneous.

### VII

[¶ 17] Kenneth asserts the trial court erred in ordering him to pay $2,500 towards Janet's attorney fees. Under N.D.C.C. 14–05–23, the court has authority to award attorney fees in a divorce action. The trial court's decision regarding attorney fees will not be disturbed on appeal unless it is affirmatively established the trial court has abused its discretion. *Dickson v. Dickson*, 1997 ND 167, ¶ 18, 568 N.W.2d 284. The principle factors for the court to consider in awarding attorney fees are need and ability to pay. *Mahoney v. Mahoney*, 1997 ND 149, ¶ 40, 567 N.W.2d 206. The trial court found there was considerable disparity in incomes between these parties. We are convinced the court took into account each of the parties' needs and abilities to pay when it ordered Kenneth to pay $2,500 for Janet's attorney fees, and we conclude the trial court did not abuse its discretion.

### VIII

[¶ 18] The trial court ordered Kenneth to pay for BethAnn's health insurance and medical expenses "through the age of 23, or through her successful completion of college and a bachelor's degree, whichever is sooner." The court also ordered Kenneth to pay "one-half of BethAnn's reasonable college education expenses, including books, tuition and housing. Reasonable expenses are those incurred in pursuing a four year degree in consecutive years upon graduation from high school." Kenneth asserts these orders are clearly erroneous, because the trial court has

no authority to order a parent to pay support for an adult child.

[¶ 19] In a divorce action, the court has authority to order payment of post-minority support, including college expenses, under appropriate circumstances. *See Zarrett v. Zarrett*, 1998 ND 49, ¶ 14, 574 N.W.2d 855; *see also* N.D.C.C. 14–09–08.2(4). We explained the rationale for and limitations upon a court's award of college education expenses in *Davis v. Davis*, 268 N.W.2d 769, 778 (N.D.1978), *overruled on other grounds Nelson v. Trinity Medical Center*, 419 N.W.2d 886 (N.D.1988):

"We conclude that the court did not erroneously interpret §§ 14–05–24 or 14–05–25, N.D.C.C., when it created a trust for the education of the four minor children (which would include a college education).... There has been a trend toward awarding moneys for the furthering of education for children, including a college education, by the courts of the various States, even though the parents are divorced.... This determination is based upon factors which include the financial condition of a parent, as well as the family mode of living prior to the divorce....

"We adopt the rationale in those cases in Annot., 56 A.L.R.2d 1207 which affirm the court's provision for a college education. We are not unaware of the increasing necessity of a college education or its equivalent, as well as the tremendous escalation of the costs of securing such an education."

[¶ 20] We caution that a trial court's authority to award postminority support to a child of a divorce is limited, and must be based upon full consideration of the particular circumstances of the case. The Supreme Court of New Jersey in *Newburgh v. Arrigo*, 88 N.J. 529, 443 A.2d 1031, 1038–1039 (1982), aptly describes the factors a court must consider in directing a parent to pay for costs of a child's college education:

"In evaluating the claim for contribution toward the cost of higher education, courts should consider all relevant factors, including (1) whether the parent, if still living with the child, would have contributed toward the costs of the requested higher education; (2) the effect of the background, values and goals of the parent on the reasonableness of the expectation of the child for higher education; (3) The amount of the contribution sought by the child for the cost of higher education; (4) the ability of the parent to pay that cost; (5) the relationship of the requested contribution to the kind of school or course of study sought by the child; (6) the financial resources of both parents; (7) the commitment to and aptitude of the child for the requested education; (8) the financial resources of the child, including assets owned individually or held in custodianship or trust; (9) the ability of the child to earn income during the school year or on vacation; (10) the availability of financial aid in the form of college grants and loans; (11) the child's relationship to the paying parent, including mutual affection and shared goals as well as responsiveness to parental advice and guidance; and (12) the relationship of the education requested to any prior training and to the overall long-range goals of the child."

[¶ 21] Of these factors, the parent's ability to pay is most significant, and a parent cannot be compelled to contribute to an adult child's college expenses if the parent's financial resources are lacking. *Moehring v. Maute*, 268 N.J.Super. 477, 633 A.2d 1055, 1056–1057 (1993). The court must consider all relevant factors in deciding whether to award post-minority support. *Stanford v. Stanford*, 628 So.2d 701, 703 (Ala.Civ.App. 1993). It is essential the court consider evidence pertaining to the amount required for college costs, including books, tuition, room and board, and to determine the amount that a parent can contribute without experiencing undue hardship. *Id.*

[¶ 22] The Supreme Court of Alabama emphasizes in *Ex Parte Bayliss*, 550 So.2d 986, 987 (Ala.1989), the relevant factors the trial court must consider in awarding post-minority support:

"[A] trial court may award sums of money out of the property and income of either or both parents for the post-minority education of a child of that dissolved marriage.... In doing so, the trial court shall

consider all relevant factors that shall appear reasonable and necessary, including *primarily* the financial resources of the parents and the child and the child's commitment to, and aptitude for, the requested education. The trial court may consider, also, the standard of living that the child would have enjoyed if the marriage had not been dissolved and the family unit had been preserved and the child's relationship with his parents and responsiveness to parental advice and guidance."

[¶ 23] Here the trial court found Kenneth "helped the older children, Amy and Nathan by providing funds toward a college education." The court also found "Kenneth has the ability to provide for and pay a portion of BethAnn's college expenses." Other than these conclusory statements, the court made no specific findings of the relevant factors and circumstances the court needed to consider in awarding BethAnn post-minority support for college and medical expenses. The court placed no limit on the amount of Kenneth's obligation to BethAnn. While the court did attempt to define college expenses, and did impose a limit as to time, it said nothing as to the cost or quality of the education to be financed. While setting an exact dollar amount for such an obligation will not always be desirable or even possible in many cases, fairness and equity require that obligors not be subjected to court-ordered obligations that are unlimited.

[¶ 24] We conclude the trial court's award of post-minority support is not adequately supported by specific findings of fact, and is insufficiently bound by reasonable limitations. We, therefore, reverse the award of post-minority medical and college expenses and remand for additional findings of fact and reconsideration of the issue.

### IX

[¶ 25] Kenneth has raised additional issues which we conclude are entirely without merit.

[¶ 26] The judgment is affirmed in part, reversed in part, and remanded for redetermination on the issue of post-minority support.

[¶ 27] NEUMANN, MARING and MESCHKE, JJ., concur.

VANDE WALLE, Chief Justice, concurring in part and dissenting in part.

[¶ 28] I do not believe either statutory law or case law supports the trial court's Order that Kenneth pay one-half of BethAnn's reasonable college education expenses, including books, tuition and housing incurred in pursuing a four-year degree. I therefore dissent to part VIII of the majority opinion. I concur in the remainder of the opinion.

[¶ 29] There is no evidence that the parties agreed to provide such support upon divorce. Surely the fact the parents established a college savings account is not, alone, evidence of such an agreement. If it is, it may well have a chilling effect on the establishment of future such accounts lest it be construed by a court as a nonretractable obligation to furnish a college education to the children of the parties. While I hope divorced parents would continue to support their children in seeking college educations, that is a far cry from concluding a court can impose an obligation upon the parents to do so as a matter of law. There are parents who remain married who do not provide a college education for their children for a variety of reasons, not all of them financial. No one has yet, to my knowledge, held they are obliged to do so as a matter of law. I do not believe the child of a divorced parent has a greater legal right to that college education than a child whose parents remain married.

[¶ 30] In *Freyer v. Freyer*, 427 N.W.2d 348 (N.D.1988), we dealt with the anomaly of the child who reaches age 18 while still in high school. We affirmed an order continuing child support until the child graduated from high school, relying on a California decision, *Rebensdorf v. Rebensdorf*, 169 Cal.App.3d 138, 215 Cal.Rptr. 76 (1985), construing a statute similar to section 14–09–10, N.D.C.C., requiring parental support of a child "who is unable to maintain himself by work." The California Court observed that under their statute, Section 206 of the California Civil

Code: "The inability to maintain oneself by work need not be the result of a permanent condition...." 169 Cal.App.3d at 143, 215 Cal.Rptr. at 79. In *Freyer*, we observed that "a child who has reached age eighteen but is still in high school may, under appropriate circumstances, be considered unable to maintain himself by work." *Id.* at 351. As footnote 3 in *Freyer* notes, many states have resolved the issue legislatively. That resolution is primarily to permit support until the child finishes high school.

[¶ 31] In 1989, in apparent response to *Freyer*, our Legislature enacted SB2356, 1989 N.D. Laws Ch. 180, which required support until "the end of the month during which the child is graduated from high school or attains the age of nineteen years, whichever occurs first ...," if the child "is enrolled and attending high school and is eighteen years of age prior to the date the child is expected to be graduated...." That section was subsequently codified as section 14–09–08.2(1), N.D.C.C. *See Steffes v. Steffes*, 560 N.W.2d 888 (N.D.1997).

[¶ 32] Subsection 4 of section 14–09–08.2, N.D.C.C., added, as the majority notes in 1993, contains indecisive language about what the preceding language in section 14–09–08.2, N.D.C.C., "does not preclude." The legislative history concerning the purpose of the amendment is equally uninformative. Prior to this case, we have only had the opportunity to consider orders requiring child support during college as a result of a judgment entered upon stipulation of the parties. *E.g., Steffes; Botner v. Botner*, 545 N.W.2d 188 (N.D.1996). *See also, Garbe v. Garbe*, 467 N.W.2d 740 (1991) (educational trust fund).

[¶ 33] If the Legislature intended section 14–09–08.2(4), N.D.C.C., to be an invitation to the courts to now require college education as part of a support order, that intent is not clear to me. I do not totally foreclose the authority to make such an order in the appropriate or rare case but this is not such a case.

[¶ 34] Although the majority opinion makes a valiant attempt to circumscribe the trial court's "authority to award post-minority support to a child of a divorce," relying on

cases from other jurisdictions, I believe the result leads us into a morass from which it will take years and many court decisions to emerge. Indeed, the Legislature determined it necessary to require child support guidelines to enable the courts to properly order support for minor children of a divorce. If they intended to authorize or require support for adult children of the divorce, I expect they would have done so in more direct and specific terms. The statutory provisions, as we have heretofore construed them, "are plain and concise limiting the support, maintenance, and education of the children to the period of their minority." *Roberta Jo W., v. Leroy W.*, 218 Wis.2d 225, 578 N.W.2d 185 (1998), quoting *O'Neill v. O'Neill*, 17 Wis.2d 406, 408, 117 N.W.2d 267 (1962). As a result, "any order awarding support money for an adult child in a divorce action would necessarily be extrajudicial, a nullity." *Id.*

[¶ 35] If support for adult children in college is to be ordered, and I am not philosophically opposed to that prospect, it ought to be under explicitly defined circumstances. If the authority is not explicitly defined, the issue will simply be another weapon to be used by one party against the other party in the divorce.

[¶ 36] Gerald W. VandeWalle, C.J.

SANDSTROM, Justice, concurring in part, dissenting in part.

[¶ 37] Because the majority's opinion affirming the district court's order that Kenneth Donarski contribute to the college education of his adult child is contrary to law and public policy, I respectfully dissent from part VIII of the majority's opinion.

[¶ 38] The parties conceded at oral argument that absent a statute to the contrary, parents generally have no duty to support their adult children. Under our statutes, parents' duty to support their child will generally terminate when the child is age 18. *See Freyer v. Freyer*, 427 N.W.2d 348, 349 (N.D.1988). But the majority boldly states at ¶ 19: "In a divorce action, the court has authority to order payment of post-minority support, including college expenses, under appropriate circumstances." The majority

tells us to "see" *Zarrett v. Zarrett,* 1998 ND 49, ¶ 14, 574 N.W.2d 855, N.D.C.C. 14–09–08.2(4), and *Davis v. Davis,* 268 N.W.2d 769, 778 (N.D.1978), *overruled on other grounds, Nelson v. Trinity Medical Center,* 419 N.W.2d 886 (N.D.1988), for support of this assertion.

[¶ 39] *Zarrett* involved a stipulation—something not present here. *Davis,* a pre-Child Support Guidelines case, allowed the creation of trust funds for minor children, but did so under N.D.C.C. § 14–05–25, allowing courts to require reasonable security.

[¶ 40] In 1993, the Legislature enacted N.D.C.C. § 14–09–08.2(4):

"This section does not preclude the entry of an order for child support which continues after the child reaches age eighteen, if the parties agree or if the court determines the support to be appropriate."

[¶ 41] The majority's attempt to rely on this language as a grant of additional authority to the trial court is contrary to the plain language of the statute, and contrary to the legislative history. The language, "does not preclude," is not a grant of authority. *See Bangen v. Bartelson,* 553 N.W.2d 754, 756–57 (N.D.1996) (The effect of the "does not preclude" language of N.D.R.Civ.P. 57 is to not foreclose court's reliance on specific statutory authority under N.D.C.C. §§ 32–23–02 and 32–23–03.); *City of Grand Forks v. Risser,* 512 N.W.2d 462, 463, 465 (N.D.1994) (Evidence N.D.C.C. § 39–20–02 "does not preclude" is admissible because it is relevant evidence under N.D.C.C. § 39–20–07(2).). "May" would "confer a power, privilege, or right." *North Dakota Legislative Drafting Manual* 105 (1997).

[¶ 42] There have long been limited circumstances under which parents have had a statutory legal duty to support adult children. *See, e.g., Wiedrich v. Wiedrich,* 179 N.W.2d 728, 730 syl. 5, 731 (N.D.1970) ("The mother and the father of any person who is unable to maintain himself because of mental or physical defects have the duty to maintain and care for such person" even after reaching majority, under N.D.C.C. § 14–09–10.). The language, "does not preclude," makes it clear other statutory circumstances when parents are held responsible for the care of their adult children are "not preclude[d]" by the provisions of N.D.C.C. § 14–09–08.2. The legislative history reflects the change relied on by the majority is only intended to "clarify," and not to change the "policies that underlie the current law." *Hearing on H.B. 1181 Before the House Human Services Comm.,* 53rd N.D. Legis. Sess. (Jan. 18, 1993) (testimony of Blaine Nordwall, Assistant Attorney General representing the Dept. of Human Services) [*"Hearing on H.B. 1181 "*]. Nordwall explained Section 3 of the bill, which contained all the amendments to N.D.C.C. § 14–09–08.2, including subsection 4:

"*SECTION 3* (page 5, line 13) *amends the law governing the continuation of support for children who reach age 18 before high school graduation.*

— *The policies that underlie the current law would continue under the amendment.*

— The amendment clarifies the requirements for the affidavit that continues the support.

— The amendment provides that the right of support is not lost simply because the affidavit is not filed before the child reaches age 18 (subsection 3 at page 6, line 10).

— The amendment *clarifies* that this is not the only basis under which support could continue after age 18 (subsection 4 at page 6, line 15)."

*Hearing on H.B. 1181* (emphasis added). The majority's reliance on N.D.C.C. § 14–09–08.2 is wholly unjustified.

[¶ 43] The majority cites no applicable law to justify its action opening the door for vast incursion of the courts into the lives of ordinary citizens.[1] While the majority cites cases from Alabama and New Jersey to ex-

---

1. Because there is no such statute, we would not need to reach the constitutionality of a statute allowing a court to order divorced parents to pay the college expenses of an adult child, although courts have found such provisions unconstitu- tional. *See, e.g., Curtis v. Kline,* 542 Pa. 249, 666 A.2d 265 (1995) (holding statute permitting a court to require divorced parents to pay for college education unconstitutional as violative of equal protection).

plain what limits are to be placed on a court's authority to award post-minority support for college education, these cases show North Dakota courts do not have the authority to award post-minority support in the first place. Both Alabama and New Jersey recognize the power of a court to order post-minority support for college education is statutory. *Ex Parte Bayliss*, 550 So.2d 986, 989 (Ala.1989); *Cohen v. Cohen*, 6 N.J.Super. 26, 69 A.2d 752, 754 (App.Div.1949). While both of the states have general support statutes similar to ours, both the Alabama and New Jersey courts have interpreted children to mean dependent children, even if over the age of majority. *Ex Parte Bayliss* at 989; *Cohen*, 69 A.2d at 754. For us to reach this result, however, we must ignore N.D.C.C. § 14–10–01, which states the term "child" means "minor" and a minor is a person under 18. *See Freyer v. Freyer*, 427 N.W.2d 348, 349 (N.D.1988). Apparently, the Alabama and New Jersey courts were not so bound.

[¶ 44] Under the majority's analysis, post-minority support is *not* limited to college expenses; there is no age limit on adult children eligible for support; there is no requirement a child be mentally or physically disabled; there is no requirement of a specific statutory authorization for a particular purpose. Under the majority's analysis, except for college expenses, apparently all that is required is the court determine the support to be "appropriate." N.D.C.C. § 14–09–08.2(4).

[¶ 45] Under the majority's analysis, a trial court in a divorce case could apparently order one or both parents to provide an allowance to their mentally and physically *able* middle-aged adult children as long as the court determines the support to be "appropriate." And a trial court could order divorcing parents to treat all their adult children the same, by providing the same support for all, or equalizing for previous gifts as long as the court determines the support to be "appropriate." Such decisions have previously belonged exclusively to the parents. *See Mertz v. Arendt*, 1997 ND 113, ¶ 16, 564 N.W.2d 294 (unequal gift to adult child upheld over challenge from siblings); *Matter of Estate of Herr*, 460 N.W.2d 699, 703 (N.D.

1990) ("a parent may disinherit children"); *Flaherty v. Feldner*, 419 N.W.2d 908, 911 (N.D.1988) (VandeWalle, J., concurring in result) ("a parent may, in his will, disinherit a child without laboring under an insane delusion"). Unfortunately, this clearly established law is apparently irrelevant under the majority analysis.

[¶ 46] I would reverse the district court's order of support for an adult child.

[¶ 47] Dale V. Sandstrom