1997 ND 49

**Judy Lorraine STEFFES, Plaintiff and Appellant,**

v.

**Allen Edward STEFFES, Defendant and Appellee.**

**Civil No. 960188.**

Supreme Court of North Dakota.

April 1, 1997.

Rehearing Denied April 22, 1997.

---

Lowell P. Bottrell (argued), of Anderson & Bailly, Fargo, for plaintiff and appellant.

David A. Garaas (argued), of Garaas Law Firm, Fargo, for defendant and appellee.

MARING, Justice.

[¶ 1] Judy Steffes appeals from an amended judgment crediting Allen Steffes for some post-majority child support that had been withheld from his income under a withholding order. We hold Allen was not obligated

to pay post-majority child support whenever the contingencies specified in the parties' stipulated divorce decree were not satisfied, and he was entitled to a credit for some of the post-majority support withheld from his income. We hold, however, he was not entitled to a pro rata credit for the children who did not satisfy those contingencies, and we remand for further proceedings consistent with this opinion.

## I

[¶ 2] Allen and Judy were divorced in 1983 under a stipulated decree which required Allen to pay Judy $200 per month per child for support for their three children: Katja,[1] born March 5, 1972; Lindsay, born July 12, 1976; and Jordyn, born May 30, 1979. The judgment required Allen to pay post-majority support for the children under certain conditions:

child support payments ... shall continue ... until a child attains the age of 18 years, at which time payments shall cease with respect to that child. However, if a child is living at home or taking a full schedule of classes at a qualified educational institution said payments shall continue even though said child has attained the age of 18 years until said child ceases to live at home or ceases to take a full schedule of classes at a qualified educational institution, provided that said educational expenses hereby assumed by [Allen] shall cease when said child has attained the age of 22 years. [Allen] shall assume responsibility for all direct post-secondary education and expenses incurred by the children of the parties, until said children have attained the age of 22 years.

[¶ 3] In 1990, Allen and Judy agreed to increase Allen's monthly child support obligation to "$225.00 per child for a total of $675.00." An amended judgment, however, stated Allen's obligation as "$675 per month" and not on a "per child" basis. Allen subsequently began paying child support through income withholding.

[¶ 4] In July 1993, Allen moved to modify his obligation, alleging, in part, Katja was not a full-time student and had reached the age of majority. The district court affirmed a referee's finding Katja was a full-time student, and based on Allen's monthly income of about $1,900, his $675 per month obligation for three children was within the range of support authorized by the child support guidelines.

[¶ 5] In January 1994, Katja was no longer enrolled in college, nor living at home. She turned 22 on March 5, 1994. Lindsay, who turned 18 on July 12, 1994, was hospitalized during her senior year of high school and did not graduate with her class in May 1994. She moved from Judy's home to Colorado in October 1994, and graduated from high school by correspondence in February 1995. Lindsay returned to Judy's home from March 1995 through October 1995, when she moved back to Colorado and attended college part-time. According to Lindsay, she could not afford to attend college on a full-time basis.

[¶ 6] In December 1995, Allen moved to reduce his child support obligation, contending Katja and Lindsay were not living at home and were not attending college on a full-time basis. In January 1996 Allen moved under N.D.R.Civ.P. 60(a) to correct a "clerical mistake" in the judgment to show his child support obligation had been $225 per month per child. He also sought a pro rata reduction in his support obligation.

[¶ 7] A referee ordered the judgment corrected under N.D.R.Civ.P. 60(a) to reflect the parties' agreement for support on a $225 per month per child basis. The referee found Katja was over 18 and had not been living at home, nor taking a full schedule of classes since January 1994. The referee concluded Allen was entitled to a credit of $225 per month from January 1994 for support withheld from his income for Katja. The referee found Lindsay was over 18 and had not been living at home, nor taking a full schedule of classes since October 1994. The

---

1. Katja was Allen's daughter from a previous marriage and was adopted by Judy.

referee concluded Allen was entitled to a credit of $225 per month from October 1994 for support withheld from his income for Lindsay. The referee also found Allen's net monthly income was approximately $1,800, and, under the child support guidelines, ordered Allen to pay $378 per month beginning in January 1996 for the remaining child, Jordyn. The referee further concluded Allen was entitled to a credit for medical payments he had made on behalf of the children. The district court affirmed the referee's decision.

## II

[¶ 8] District court review of a referee's findings of fact is under the clearly erroneous standard. *Throndset v. Hawkenson,* 532 N.W.2d 394, 397 (N.D.1995); *Benson v. Benson,* 495 N.W.2d 72, 78 (N.D.1993). A referee's conclusions of law, however, are fully reviewable. *Throndset,* 532 N.W.2d at 397. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support the finding, or if, on review of the entire evidence, the reviewing court is left with a definite and firm conviction a mistake has been made. *Helbling v. Helbling,* 541 N.W.2d 443, 445 (N.D.1995). A change or modification of child support based upon an erroneous application of the guidelines or statutes is clearly erroneous. *Mahoney v. Mahoney,* 538 N.W.2d 189, 192 (N.D.1995).

## III

### A

[¶ 9] Judy contends the district court erred in affirming the referee's decision to give Allen a $225 per month credit for Katja retroactively to January 1994 and for Lindsay retroactively to October 1994. She argues Allen did not ask for that relief.

[¶ 10] Allen's December 1995 motion sought:

an order correcting the clerk's accounting as to the amount of child support arrearages on the following grounds:

a. That the oldest daughter turned 22 in March of 1994, which should have automatically reduced the $675.00 amount of child support to $584.00 per month (based upon a net income of $1,933.00 and 2 children);

b. That the oldest child was not a full-time student and was not living at the house; and

c. That the second oldest child is not a full-time student and is not living with the mother.

... That all amounts paid in excess of child support for two children, after Katja was no longer a student and after one child graduated from high school or obtained the age of 18, should be a credit towards arrearages and attorney fees awarded on prior motions.

[¶ 11] Allen's January 1996 motion under N.D.R.Civ.P. 60(a) alleged the amended judgment mistakenly stated Allen's obligation as $675 per month and asked the court to correct the clerical mistake to reflect the parties' stipulation of $225 per month per child. Allen also asked for a $225 per month per child credit for support withheld from his income when Katja and Lindsay were not living at home, nor attending college on a full-time basis.

[¶ 12] Although the parties' stipulation merged into the judgment, *Sullivan v. Quist,* 506 N.W.2d 394, 399 (N.D.1993), clerical mistakes in a judgment may be corrected under N.D.R.Civ.P. 60(a). *Farm Credit Bank v. Obrigewitch,* 462 N.W.2d 113, 115 (N.D.1990); *Gruebele v. Gruebele,* 338 N.W.2d 805, 811–12 (N.D.1983); *Cokins v. Frandsen,* 136 N.W.2d 377, 379 (N.D.1965). The referee decided the failure of the amended judgment to state child support on a per month per child basis was a clerical mistake and corrected the mistake to reflect the parties' prior stipulation. The correction of the amended judgment under N.D.R.Civ.P. 60(a), and the credit for payments made on behalf of Katja and Lindsay under that judgment were within the scope of Allen's motions.

### B

[¶ 13] Our conclusion about the scope of Allen's motions, however, does not end our

inquiry. Judy claims the court erred in retroactively modifying Allen's obligation by giving him a credit for support withheld from his income when Katja and Lindsay were not living at home, nor attending college on a full-time basis.

[¶ 14] A court has continuing jurisdiction to modify child support. *E.g., Rueckert v. Rueckert*, 499 N.W.2d 863, 867 (N.D. 1993). *See* N.D.C.C. § 14–05–24. Under settled principles, however, a vested child support obligation cannot be retroactively modified. *Brakke v. Brakke*, 525 N.W.2d 687, 690 (N.D.1994); *Rueckert*, 499 N.W.2d at 870; *Thorlaksen v. Thorlaksen*, 453 N.W.2d 770, 775–76 (N.D.1990). *See* N.D.C.C. § 14–08.1–05(1)(c) (due and unpaid child support not subject to retroactive modification). Depending on the facts of the case, the effective date for a modification of child support generally is the date the motion was filed, or some later date. *Gabriel v. Gabriel*, 519 N.W.2d 293, 295 (N.D.1994); *Shipley v. Shipley*, 509 N.W.2d 49, 53 (N.D.1993); *Olson v. Garbe*, 483 N.W.2d 775, 776 (N.D. 1992). We have said parties seeking to change child support should make a prompt motion to modify the obligation. *Brakke*, 525 N.W.2d at 690. *See Throndset*, 532 N.W.2d at 397.

[¶ 15] Judy argues any change in Allen's obligation should have been effective from the time of his motion to modify. She argues the credit received by Allen was a retroactive modification of his obligation. Her arguments raise issues about the mechanics for terminating Allen's post-majority support obligation under the contingencies of this judgment and our income withholding statutes.

[¶ 16] Except for rare occasions when there is good cause not to order immediate withholding, our law now requires an obligor's child support to be paid through income withholding. N.D.C.C. § 14–09–09.24; *Shipley*, 509 N.W.2d at 54–55. *See generally* N.D.C.C. § 14–09–09.3 *et seq.* Under N.D.C.C. § 14–09–09.17, an income withholding order "is to be amended by the clerk when the total amount of money to be withheld is changed by elimination of arrearages or by court-ordered change in amount of child support" and "is to be terminated when the duty to support ceases and all child support arrearages have been paid." Those statutes do not resolve the intricacies for termination of an income withholding order under the contingencies in this judgment.

[¶ 17] Ordinarily, a child support obligation automatically terminates when the child reaches majority. 24 Am.Jur.2d *Divorce and Separation* § 1049 (1983); 27C C.J.S. *Divorce* § 687 (1986). We have said a parent's support obligation generally ends when the child turns 18. *Freyer v. Freyer*, 427 N.W.2d 348, 349 (N.D.1988). In *Freyer*, 427 N.W.2d at 351, however, we held N.D.C.C. §§ 14–05–24, 14–09–08, and 14–10–01 authorized a court to award support for a child who was over 18 and still in high school.

[¶ 18] In response to *Freyer*, the Legislature adopted N.D.C.C. §§ 14–09–08.2 and 14–09–08.3 [2] to provide a simplified method

2. Section 14–09–08.2, N.D.C.C., outlines provisions for post-majority child support and currently provides, in part:
 1. A judgment or order requiring the payment of child support until the child attains majority continues as to the child until the end of the month during which the child is graduated from high school or attains the age of nineteen years, whichever occurs first, if:
  a. The child is enrolled and attending high school and is eighteen years of age prior to the date the child is expected to be graduated; and
  b. The child resides with the person to whom the duty of support is owed.

2. The person to whom the duty of support is owed shall file an affidavit with the district court stating that the requirements of subsection 1 are met. The clerk of court shall serve the affidavit by first-class mail upon the person owing the duty of support. Upon the filing of the affidavit, the child support continues pursuant to subsection 1. If the person owing the duty of support files a motion with the court, within twenty days subsequent to service of the affidavit, requesting a hearing before the district court, the court shall determine if the

for amending a support order for children over 18 who are still in high school and living with the obligee. *See* January 25, 1989 Minutes of Senate Judiciary Committee and March 6, 1989 Minutes of House Judiciary Committee regarding Senate Bill 2356. In 1993 the Legislature adopted N.D.C.C. § 14–09–08.2(4) to clarify another basis for post-majority child support, i.e., the parties' agreement. *See* January 18, 1993 Minutes of House Human Services Committee regarding House Bill 1181, Testimony of Blaine Nordwall. *See generally Botner v. Botner*, 545 N.W.2d 188, 190 (N.D.1996).

[¶ 19] This stipulated judgment said Allen's child support obligation ceased when a child turned 18 unless the child was living at home or taking a full schedule of classes at a qualified educational institution, in which case his obligation would continue until those contingencies ceased or the child turned 22. Neither this judgment, nor our statutes provide a simplified method for terminating Allen's post-majority support obligation. *Compare* N.D.C.C. § 14–09–08.2(2) (procedure for notifying court whenever adult child is attending high school and residing with obligee).

[¶ 20] In *Marriage of Eusterman*, 41 Or. App. 717, 598 P.2d 1274, 1282 (1979), the Oregon Court of Appeals said post-majority support for children attending school was a contingent obligation, and if the contingency which triggered the obligation did not occur or ceased to occur, the support payments otherwise payable did not accrue. The court said it would be better practice, and offer maximum protection to the parties, to promptly obtain a court order modifying the noncustodial parent's obligation. The court held, however, the noncustodial parent was not liable for post-majority support when the educational contingencies were not met. *Eusterman*, 598 P.2d at 1282. *See also Marriage of Riback*, 59 Or.App. 670, 651 P.2d 1089, 1090 (1982) (support obligation became mandatory upon occurrence of the contingency on which the obligation depended).

[¶ 21] We agree with the Oregon Court of Appeals an obligor is not liable for post-majority support whenever the contingencies of the judgment are not satisfied. Under this judgment Allen was not obligated to pay, and Judy was not entitled to receive, child support for the benefit of a child whenever the conditions enumerated in the judgment were not satisfied for that child. These post-majority contingencies are, in effect, self-executing, and each party has an obligation to ascertain the existence of those conditions.

[¶ 22] Our decision is not a retroactive modification of Allen's child support obligation. Rather, it is an accounting and credit for child support which did not accrue, but which was withheld from Allen's income even though the contingencies of the judgment were not being satisfied. *See Eusterman*, 598 P.2d at 1282. Our decisions in *Brakke* and *Rueckert* support our conclusion Allen is entitled to a recalculation and credit for his child support obligation when the contingencies of the judgment were not satisfied.

[¶ 23] In *Brakke*, the trial court ordered a father to pay child support beginning in September 1991. However, under an agreement with the mother, the father had actual physical custody of the child after November 1991. The father stopped paying child support in November 1991, and, in March 1994, he sought to vacate his unpaid support obligation effective from November 1991. We held, where both parents had agreed to an

---

requirements of subsection 1 are met and shall enter an order accordingly.
\* \* \* \* \* \*
4. This section does not preclude the entry of an order for child support which continues after the child reaches age eighteen, if the parties agree or if the court determines the support to be appropriate.

Section 14–09–08.3, N.D.C.C., describes the duration of child support obligations:

Unless dates for the commencement or termination of a child support obligation are specified by the court's order, a judgment or order requiring the payment of child support is effective as to the child in the month in which the order is signed and continues until the end of the month in which the support obligation terminates.

actual change of physical custody for an extended period of time, N.D.R.Civ.P. 60(b)(vi) could be used to provide relief from the unjust enforcement of the de facto custodial parent's support obligation. *Brakke*, 525 N.W.2d at 690. We ordered the father's support obligation vacated from November 1991. *Id.*

[¶ 24] In *Rueckert*, the parties agreed the mother would relinquish any claim in certain marital property in lieu of paying child support. We held the parental agreement purporting to prohibit or limit the power of a court to modify future child support was invalid. *Rueckert*, 499 N.W.2d at 868. We remanded for evaluation of the marital property relinquished in lieu of the mother's future child support obligation. *Rueckert*, 499 N.W.2d at 870. Our remand was for an accounting to decide the mother's child support obligation which, in effect, had been prepaid but never before determined. *Rueckert*, 499 N.W.2d at 870–871.

[¶ 25] Here, Katja had not been living at home, nor taking a full schedule of classes since January 1994. Allen, therefore, is entitled to a credit for child support withheld for her benefit since January 1994, because, under the judgment, his post-majority obligation for her terminated when she ceased living at home, or ceased taking a full schedule of classes at a qualified educational institution.

[¶ 26] Lindsay was not living at home, nor taking a full schedule of classes while Allen was making some child support payments for her benefit. However, Lindsay did live at home and was under the age of 22 years during some of the time when Allen received a credit for his obligation. The language of the judgment does not preclude resumption of Allen's obligation for a respective child whenever the contingencies for that child have been satisfied. Under the judgment, we hold Allen was entitled to a credit when Lindsay was not living at home, nor attending school on a full-time basis, but he was not entitled to a credit when Lindsay was living at home and under the age of 22 years. To the extent the referee concluded Allen was entitled to a credit for support for Lindsay when she returned to Judy's home in 1995, the referee misapplied the law. We, therefore, remand to correct the accounting and Allen's credit for the time when Lindsay satisfied the contingencies in the judgment.

## C

[¶ 27] Judy also argues Allen was not entitled to credit on a pro rata $225 per month per child basis. We agree.

[¶ 28] The parties' stipulation and the corrected judgment do not necessarily control this issue; rather, public policy dictates Allen's obligation is subject to modification under the court's continuing jurisdiction and the child support guidelines. *Rueckert*, 499 N.W.2d at 868. The guidelines contemplate a greater cost of providing for the first child of a household and do not reflect a pro rata allocation of support for each child. *Bergman v. Bergman*, 486 N.W.2d 243, 246 (N.D. 1992). The referee's pro rata credit was based on an erroneous application of the guidelines.

[¶ 29] During the relevant periods, Allen's credit should have been based on his $1,900 net monthly income which resulted in the $675 per month support obligation and the guideline amount for the number of children entitled to support. We, therefore, remand for recalculation of Allen's credit based upon his $1,900 monthly net income, the number of children eligible for support and the child support guidelines.

## IV

### A

[¶ 30] Judy asserts the court erred in affirming the referee's calculation of Allen's net income for purposes of determining his child support obligation for Jordyn. In calculating Allen's net income, the referee subtracted income taxes which would have been due on his in-kind income. Because Allen did not actually pay taxes on his in-kind

income, Judy contends he was not entitled to a deduction from his gross income for those taxes.

[¶ 31] Section 14–09–09.7(3), N.D.C.C., establishes "a rebuttable presumption that the amount of child support that would result from the application of the child support guidelines is the correct amount of child support." The presumptive amount of child support is a scheduled amount, which is based upon the "obligor's monthly net income and the number of children for whom support is being sought." N.D.A.C. § 75–02–04.1–10. The obligor's net income is calculated by first computing gross income under N.D.A.C. § 75–02–04.1–01(5), and then subtracting the items listed in N.D.A.C. § 75–02–04.1–01(7).

[¶ 32] Section 75–02–04.1–01(7)(a) and (b), N.D.A.C., authorize a deduction from "gross income" for federal and state income tax "obligation[s] based on application of standard deductions and tax tables." We have said an obligor is not entitled to deduct the amount of federal and state income taxes the obligor actually designates to be withheld from his income; instead, the obligor is entitled to deduct only the amount of taxes attributable to the standard deductions and tax tables. *E.g., Hallock v. Mickels,* 507 N.W.2d 541, 545 (N.D.1993). The child support guidelines preclude an obligor from withholding an artificially high amount of taxes from gross income in an effort to reduce net income for purposes of calculating a child support obligation. The relevant deductions are linked to the obligor's federal and state income tax "obligation[s]." The ordinary meaning of "obligation" imposes a legally binding duty to make payment or perform services. Webster's New World Dictionary 981 (Second College Ed.1980).

[¶ 33] Under the ordinary meaning of "obligation," Allen is not entitled to an artificial deduction for federal and state income tax "obligation[s]" that he did not pay on his in-kind income. Because we have remanded to recalculate the amount of Allen's credit, we also direct the court to recalculate Allen's net income and make any appropriate adjustments for Allen's support obligation.

B

[¶ 34] Judy contends Allen was not entitled to a deduction from his gross income for medical expenses he was not paying on a regular and consistent basis.

[¶ 35] Section 75–02–04.1–04(7)(e), N.D.A.C., authorizes a deduction from gross income for "[p]ayments made on actual medical expenses of the child or children for whom support is being sought." Based on Allen's testimony, the referee found Allen paid about $150 per month for medical expenses for the children. The district court concluded the referee's finding was not clearly erroneous. Although Judy characterizes Allen's evidence as "minuscule," we agree with the court that the referee's finding on this issue is not clearly erroneous.

[¶ 36] We remand for further proceedings consistent with this opinion.

[¶ 37] VANDE WALLE, C.J., and NEUMANN, MESCHKE and SANDSTROM, JJ., concur.

