1997 ND 149

**Debra Susan MAHONEY, Plaintiff and Appellee,**

v.

**Timothy James MAHONEY, Defendant and Appellant.**

Civil No. 970017.

Supreme Court of North Dakota.

July 23, 1997.

Jonathan T. Garaas (argued), of Garaas Law Firm, South, Fargo, for Plaintiff and Appellee.

Randolph E. Stefanson (argued), of Stefanson, Plambeck & Foss, Moorhead, MN, for Defendant and Appellant. Appearance by Todd W. Foss.

MESCHKE, Justice.

[¶ 1] Timothy James Mahoney appeals an amended divorce decree modifying his child and spousal support obligations. We affirm in part, reverse in part, and remand.

[¶ 2] Tim and Debra Susan Mahoney were divorced in September 1992. At that time, Tim was a surgeon at Dakota Clinic, Ltd., in Fargo, earning a gross annual income of $242,100. The decree placed custody of their three children with Debra, and ordered Tim to pay Debra $2,000 per month in spousal support for four years and $4,080 per month in child support.

[¶ 3] In May 1993, Tim moved to reduce his child and spousal support obligations, alleging a significant change in his financial circumstances. By affidavit, Tim stated he had resigned from Dakota Clinic in October 1992 and started his own practice with two other surgeons. He alleged his income had decreased and had reduced his ability to pay the support ordered by the September 1992 decree. The trial court denied Tim's motion, and he appealed.

[¶ 4] In *Mahoney v. Mahoney*, 516 N.W.2d 656, 662 (N.D.App.1994) (*Mahoney I* ), the Court of Appeals reversed and remanded for

reconsideration, explaining it was "unable to conclude that the trial court's erroneous view that [Tim] was required to obtain prior court approval before changing employment did not color its judgment in denying the motion for modification." On remand, the trial court reduced Tim's child support to $1,500 per month, and his spousal support to $1,000 per month. The court extended Tim's spousal support obligation for an additional year until September 1997, and ordered him to pay Debra $2,500 in attorney fees. Debra appealed.

[¶ 5] In *Mahoney v. Mahoney*, 538 N.W.2d 189, 193–195 (N.D.1995) (*Mahoney II*), we reversed and remanded for a redetermination of Tim's net income from self-employment, ruling the trial court's findings about Tim's reduced income from self-employment were inconsistent with the child support guidelines. On remand, the trial court referred the calculation of Tim's net monthly income under the child support guidelines to a special master. In his May 1996 report, the special master found Tim had a net annual income of $105,799 in 1993, $90,621 in 1994, and $124,942 in 1995.

[¶ 6] In July 1996, Debra moved for relief from the September 1992 decree. She requested: 1) modification to allow her to claim one child as a dependent for income tax purposes; 2) modification of the child support obligation; 3) modification of the spousal support obligation including extending it for eighteen months commencing July 1, 1996; and 4) an award of all attorney fees incurred by her on Tim's May 1993 motion to modify his support obligations.

[¶ 7] After an August 1996 hearing on all pending motions, the trial court accepted the special master's report and on November 7, 1996, entered an amended decree: 1) placing physical custody of the oldest child jointly with Tim and Debra and continuing placement of physical custody of the other two children with Debra; 2) granting Tim an income-tax-dependency exemption for the oldest child, and Debra the dependency exemptions for the other two children; 3) ordering Tim to pay child support of $4,080 per month from September 8, 1992 through May 31, 1993, $2,995 per month from June 1, 1993 through December 31, 1993, $2,588 per month from January 1, 1994 through December 31, 1994, $3,464 per month from January 1, 1995 through July 31, 1996, and $2,629 per month commencing August 1, 1996; 4) ordering Tim to pay spousal support of $2,000 per month from September 8, 1992 through May 31, 1993, $1,000 per month from June 1, 1993 through July 31, 1996, and $1,740 per month for eighteen consecutive months commencing August 1, 1996; and 5) ordering Tim to pay $16,250 for Debra's attorney fees, costs, and disbursements on Tim's May 1993 motion for reduction of child and spousal support. Tim appealed, and this appellate review becomes *Mahoney III*.

[¶ 8] We review a trial court's determinations regarding child support and spousal support under the clearly erroneous standard of NDRCivP 52(a). *Quamme v. Bellino*, 540 N.W.2d 142, 145, 147 (N.D.1995). "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, on the entire evidence, we are left with a definite and firm conviction that a mistake has been made." *Dalin v. Dalin*, 545 N.W.2d 785, 788 (N.D.1996). As we explained in *Sateren v. Sateren*, 488 N.W.2d 631, 634 (N.D.1992), the complaining party on appeal bears the burden of demonstrating a finding of fact is clearly erroneous.

1. Special Master's Computation of Tim's Net Income

[¶ 9] The child support guidelines in NDAC Ch. 75–02–04.1 govern the calculation of an obligor's child support obligation. As *Hougen v. T.W.*, 1997 ND 101, ¶ 4, 564 N.W.2d 281, illustrates, under NDAC 75–02–04.1–10, the court must first calculate an obligor's gross income and then subtract certain items to determine the net income that is used to set the support amount under the guideline schedule.

[¶ 10] Tim contends the trial court clearly erred in adopting the special master's computation of his net income. He argues the computation is based on erroneous applications of the child support guidelines. First, he contends the special master miscal-

culated his net income as a self-employed obligor, under NDAC 75–02–04.1–05(1), by failing to deduct as business expense the full amounts paid for disability insurance, automobile costs, and travel. Second, Tim contends the special master miscalculated his net income under NDAC 75–02–04.1–01(7) by deducting his actual tax liability from his gross monthly income, rather than using the tax tables and standard deductions to determine the tax obligation required to be deducted from his gross monthly income.[1]

[¶ 11] During oral argument to this court, Tim conceded his arguments about the special master's computation of his net income had not been presented to the trial court. The record reflects Tim simply asked the court to use his own expert's calculations instead of the special master's calculations. Debra responds Tim waived the right to raise the issues on appeal by failing to make specific objections to the special master's report to the trial court.

[¶ 12] Generally, the failure to file timely objections to the report and recommendation of a special master waives the right to appeal the recommended findings. *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir.1995); *Smith v. Frank*, 923 F.2d 139, 141 (9th Cir.1991); *contra Hess v. Comm'r of Public Safety*, 392 N.W.2d 586, 589 (Minn.App.1986). As we explained in *Dakota Grain Systems, Inc. v. Rauser*, 435 N.W.2d 205, 208 (N.D.1989), *quoting U.S. v. Merz*, 376 U.S. 192, 199, 84 S.Ct. 639, 643–44, 11 L.Ed.2d 629 (1964), when a special master reports, "the litigants have a responsibility to assist the process . . . by making their timely objections to the report in specific, rather than in generalized form, . . ."

[¶ 13] In other cases, we have held an issue cannot be considered for the first time on appeal. *See Lang v. Bank of North Dakota*, 423 N.W.2d 501, 502 (N.D.1988); NDRCivP 46. In *Matter of Estate of Peterson*, 1997 ND 48, ¶ 19, 561 N.W.2d 618, we explained why:

> We will not address issues or contentions raised for the first time on appeal, nor, ordinarily, will the court remand a case to give a party an opportunity to redo what could have been done in the first place. *E.g., Wingerter v. North Dakota Dept. of Transp.*, 530 N.W.2d 362, 365 (N.D.1995). The purpose of an appeal is to review the actions of the trial court, not to grant the appellant the opportunity to develop and expound on new strategies or theories. *E.g., In Interest of A.G.*, 506 N.W.2d 402, 403 (N.D.1993).

Requiring a party to first present an issue to the trial court, as a precondition to raising it on appeal, gives that court a meaningful opportunity to make a correct decision, contributes valuable input to the process, and devel-

---

1. Tim contends his actual tax liability is lower than his tax adjustment using the tax tables and standard deductions, and the special master overstated his net income by deducting his actual tax lability rather than his tax adjustment when determining his child support obligation. NDAC 75–02–04.1–01(7)(a) and (b) define net income as total gross monthly income less federal and state income taxes based upon application of standard deductions and tax tables. *See Steffes v. Steffes*, 1997 ND 49, ¶ 32, 560 N.W.2d 888. Actual tax labilities are not the proper measure for calculating net income for child support; rather, the proper measure is what the taxes would have been if the standard deductions and tax tables were used. *Schleicher v. Schleicher*, 551 N.W.2d 766, 769–770 (N.D.1996). "The child support guidelines preclude an obligor from withholding an artificially high amount of taxes from gross income in an effort to reduce net income for purposes of calculating a child support obligation." *Steffes*, 1997 ND 49, ¶ 32, 560 N.W.2d 888. In *Steffes*, we held an obligor, however, is not entitled to an artificial deduction for federal and state income tax obligations that the obligor did not pay on his in-kind income. *Id.* at ¶ 33.

Tim describes four different ways that his tax adjustment, using the tax tables and standard deductions, exceeds his actual tax liability. First, he says, applying the tax tables to his income without a deduction for retirement contributions increases his tax adjustment over his actual tax liability after a deduction for retirement contributions. Second, he says, using the standard deductions increases his tax adjustment over his actual tax liability after itemized deductions. Third, Tim says, if the trial court's award of two income tax dependency exemptions to Debra is affirmed, his tax adjustment is higher than his actual tax liability after three dependency exemptions. Finally, Tim says, his tax adjustment is higher than his actual tax liability because the guideline definition of "gross income" in NDAC 75–02–04.1–01(5) does not allow a deduction for alimony paid, while his actual tax liability is based upon adjusted gross income for tax purposes after a deduction for alimony paid to Debra.

ops the record for effective review of the decision. *See In Interest of A.G.*, 506 N.W.2d 402, 403–404 (N.D.1993). In *A.G.*, 506 N.W.2d at 404, we explained that requirement prevents litigants from inviting the trial court to make an error and then seeking to prevail upon appellate review of the invited error.

[¶ 14] The trial court's order appointing the special master directed: "Upon the service of the report, objections thereto must be made by motion, and upon notice as prescribed in Rule 6(d)." In the trial court's August 1996, "Order On Motions For Modification Of Judgment Of Divorce," the court stated: "In that no party has objected, the report of Special Master Holtgrewe is accepted according to Rule 53 of the North Dakota Rules of Civil Procedure."

[¶ 15] In accepting the special master's report, the trial court explicitly relied upon the lack of an objection. For us to review what was not raised in the trial court would be unfair to that court and to Debra, and remanding would frustrate judicial economy. Public interest demands an end to litigation at some point so the parties may resume their normal lives. *Federal Land Bank of St. Paul v. Ziebarth*, 520 N.W.2d 51, 59 (N.D.1994). We conclude, by not making his specific arguments about net income to the trial court, Tim waived his right to argue on appeal that the court erred in adopting the special master's computation of his net income.

2. Income Averaging

[¶ 16] As a predictor of Tim's future income for deciding Tim's child support obligation for 1995 and thereafter, the trial court used only Tim's 1995 net annual income. Tim contends the court clearly erred in not averaging his 1995 net annual income of $124,942 with his 1994 net annual income of $90,621 and his 1993 net annual income of $105,799.

[¶ 17] "An obligor's support obligation is usually based on evidence of the obligor's past income, which is used as a predictor of future income upon which the support amount is calculated." *Hougen v. T.W.*, 1997 ND 101, ¶ 5, 564 N.W.2d 281. The guideline in NDAC 75–02–04.1–02(8), says:

> Calculations made under this chapter are ordinarily based upon recent past circumstances because past circumstances are typically a reliable indicator of future circumstances, particularly circumstances concerning income. If circumstances that materially affect the child support obligation are very likely to change in the near future, consideration may be given to the likely future circumstances.

The guidelines thus amplify the direction to use the most recent information available by allowing use of circumstances that are very likely to change "in the near future" that "materially affect the child support obligation." *Shaver v. Kopp*, 545 N.W.2d 170, 176 (N.D.1996). The guidelines neither command nor contemplate use of averaging to establish a retroactive support obligation when the obligor's actual income for the year is known. *Hougen*, 1997 ND 101, ¶ 7–8, 564 N.W.2d 281. Here, Tim's 1995 income was known, and his 1995 support obligation had to be based on that income.

[¶ 18] Tim nevertheless argues his future income is subject to fluctuation, and should be averaged for three years under NDAC 75–02–04.1–02(7).[2] In *Clutter v. McIntosh*, 484 N.W.2d 846, 848 (N.D.1992), we said: "When an obligor is self-employed with income subject to fluctuation, the administrative guidelines instruct that information from several years 'must' be used to arrive at income."

[¶ 19] The trial court made an explicit finding that Tim's income "in all likelihood would increase" from his 1995 income, rather than fluctuate. The evidence indicates Tim's most recent annual earnings are a more "reliable

---

2. NDAC 75–02–04.1–02(7) directs:
Income must be documented through the use of tax returns, current wage statements, and other information sufficiently to fully apprise the court of all gross income. Where gross income is subject to fluctuation, particularly in instances involving self-employment, information reflecting and covering a period of time sufficient to reveal the likely extent of fluctuations must be provided.

indicator of future circumstances" than averaging his income from the three previous years. The average of Tim's income from 1993, 1994, and 1995 is unlikely to be a "reliable indicator of future circumstances" because 1993, 1994, and 1995 were lower because they were Tim's first years of self-employment. In any event, if income is to be averaged, a more "reliable indicator of future circumstances" would be a five year average including Tim's 1992 gross annual income of $242,100, and his 1991 gross annual income of $299,000.[3] Tim does not argue his income from the past five years should be averaged. Instead, he picks the few years for averaging when he made the least amount of money.

[¶ 20] We conclude the trial court did not clearly err in using Tim's 1995 income to set Tim's child support obligation for 1995 and thereafter.

3.  Income Tax Dependency Exemptions

[¶ 21] Tim contends the trial court erred in awarding Debra the income tax dependency exemptions for the children living with her. When determining divorce transactions, a trial court should consider the tax consequences. *Kostelecky v. Kostelecky*, 537 N.W.2d 551, 554 (N.D.1995). A court may allocate income tax dependency exemptions. *Fleck v. Fleck*, 427 N.W.2d 355, 357–59 (N.D.1988); *McKenzie v. Jahnke*, 432 N.W.2d 556, 557 (N.D.1988). "Although it may be prudent to place the exemptions in the hands of the party who will most benefit, perhaps with a reciprocal reduction in the other party's support obligation, we have not previously required the trial courts to do so." *State ex rel. Younger v. Bryant*, 465 N.W.2d 155, 160 (N.D.1991), quoting *Illies v. Illies*, 462 N.W.2d 878, 882 (N.D.1990). Because the court decreased Tim's support obligations, and he will no longer be paying spousal support as of January 31, 1998, Tim now has less need for the dependency exemptions. On the other hand, Debra will now be able to benefit significantly from the exemptions as she has remarried and will be incurring substantial taxes as a result of her husband's income. Here, we are not left with a definite and firm conviction the court made a mistake in awarding Debra the dependency exemptions for the two children in her custody.

4.  Extension of Tim's Spousal Support Obligation

[¶ 22] In the original 1992 decree, Tim was ordered to pay $96,000 in rehabilitative spousal support over a four year period at $2,000 per month. Under the November 1996 amended decree, Tim must pay a total of $87,320 in rehabilitative spousal support, including an extension for an additional 18 months commencing August 1, 1996, in the amount of $1,740 per month.

[¶ 23] Tim contends there is no material change in circumstances justifying this extension of spousal support. At a minimum, Tim argues spousal support should be reversed and remanded for clarification and explicit findings of fact.

[¶ 24] Spousal support may be modified if there is a material change in circumstances. *Huffman v. Huffman*, 477 N.W.2d 594, 596 (N.D.1991). A finding of a material change in circumstances should be sufficiently stated so we can understand the factual basis for the trial court's decision. *Wheeler v. Wheeler*, 548 N.W.2d 27, 30 (N.D. 1996). While helpful, detailed findings of fact are not required for spousal support orders if we can satisfactorily determine the reasons for the court's decision. *Wolf v. Wolf*, 557 N.W.2d 742, 744 (N.D.1996). As we explained in *Wheeler*, 548 N.W.2d at 30, we will not remand for clarification if we can discern the rationale for the result reached by the trial court.

[¶ 25] Here, Tim originally moved for modification of his spousal support obligation. In *Mahoney II*, 538 N.W.2d at 197, we affirmed the trial court's finding of a material change in circumstances due to a reduction in Tim's income, and remanded for a redetermination of Tim's net income for setting both child and spousal support. We further authorized the

---

**3.** When the obligor is a self-employed farmer, the guidelines use a five-year income average as a predictor of future income. *See* NDAC 75–02– 04.1–05(3). In *Clutter*, 484 N.W.2d at 848–49, five years were used to figure the obligor's average annual income.

trial court to set a new effective date for Tim's changed support obligations. The decrease in Tim's income was a material change in circumstances justifying both a reduction and extension of spousal support.

[¶ 26] In addition, to complete her rehabilitation and to obtain licensure, Debra will be serving as an intern psychiatric nurse and therapist for nearly two years starting in August 1996. Although explicit findings explaining the basis for the extension of Tim's spousal support would have been preferable, we can discern the rationale for the court's decision. We decline to remand for more explicit findings.

[¶ 27] Tim argues the trial court erred by setting his extended spousal support obligation at $1,740 per month. We disagree.

[¶ 28] "[T]here is no magic formula for determining how much or what type of support should be awarded." *Wiege v. Wiege*, 518 N.W.2d 708, 712 (N.D.1994). An award of spousal support must be made in light of the needs of the disadvantaged spouse and of the supporting spouse's needs and ability to pay. *Heley v. Heley*, 506 N.W.2d 715, 720 (N.D.1993). Rehabilitative spousal support is typically limited in duration and is intended to give the disadvantaged spouse an opportunity to become adequately self-supporting through additional training, education, or experience. *Gronland v. Gronland*, 527 N.W.2d 250, 253 (N.D.1995). A spouse's need for rehabilitation is not limited to the prevention of destitution. *Beals v. Beals*, 517 N.W.2d 413, 416 (N.D.1994). Continuance of a standard of living is a valid consideration in a rehabilitative spousal support determination. *Bagan v. Bagan*, 382 N.W.2d 645, 646 (N.D.1986). In *Bakes v. Bakes*, 532 N.W.2d 666, 668 (N.D.1995), we explained a related consideration is balancing the burdens created by the separation when it is impossible to maintain two households at the predivorce standard.

[¶ 29] The trial court found Debra had a net annual income of $18,200, excluding spousal support, and that Tim had a net annual income of $124,942 in 1995. We conclude the trial court did not clearly err in setting the amount of spousal support given the disparity between Debra's and Tim's income.

[¶ 30] Tim argues his rehabilitative support obligation should not have been extended because of Debra's remarriage. We disagree.

[¶ 31] We have rejected the rule that remarriage automatically terminates the obligation to pay spousal support, *Nugent v. Nugent*, 152 N.W.2d 323, 327 (N.D.1967), especially for rehabilitative support. *Rustand v. Rustand*, 379 N.W.2d 806, 807 (N.D.1986). When the circumstances are appropriate, rehabilitative spousal support may continue after the remarriage of the disadvantaged spouse. *Bullock v. Bullock*, 376 N.W.2d 30, 31 (N.D.1985). Rehabilitative support should not automatically terminate upon remarriage of the recipient if the underdeveloped earning capacity of the recipient is not yet restored. *Wiege v. Wiege*, 518 N.W.2d 708, 713 (N.D.1994) (Levine, J., concurring), citing Marcia O'Kelly, *Entitlements to Spousal Support After Divorce*, 61 N.D.L.Rev. 225, 258–60 (1985); *see also Rustand*, 379 N.W.2d at 807. In *Bullock*, 376 N.W.2d at 31, we affirmed the continuance after remarriage of rehabilitative spousal support that was intended to pay expenses for teaching recertification.

[¶ 32] Here, the trial court's decision to extend Tim's spousal support obligation was supported by: 1) Tim's extraordinary income producing ability; 2) Debra's minimal income and continued rehabilitative needs for a two year internship to secure licensure; 3) the unexpected reduction in Debra's spousal support from June 1, 1993, through July 31, 1996; and 4) the overall reduction of Tim's spousal support obligation. We conclude the trial court's restructuring and extension of Debra's support was not clearly erroneous.

5. Computation of Debra's Income

[¶ 33] Effective August 1, 1996, their oldest child began living with Tim, while the two other children continued to live with Debra. Because of that split custody arrangement, the trial court first calculated Tim's child support obligation under NDAC 75–02–04.1–03:

A support amount must be determined for the child or children in each parent's sole custody. The lesser amount is then subtracted from the greater. The difference is the child support amount owed by the parent with the greater obligation.

To make the second calculation under NDAC 75–02–04.1–03, the trial court determined Debra's monthly child support obligation was $250, but did not include Tim's spousal support payment in Debra's gross income. Tim contends the court clearly erred in its computation of his child support obligation after August 1, 1996, by failing to include his spousal support in Debra's gross income. We agree.

[¶ 34] The guidelines expressly define "gross income" as including "spousal support." NDAC 75–02–04.1–01(5). The trial court's finding of Debra's gross income was thus based on an erroneous application of the guidelines. A finding induced by an erroneous application of the child support guidelines constitutes clear error. *Mahoney II*, 538 N.W.2d at 192. Tim's spousal support obligation of $1,740 per month for eighteen months, commencing August 1, 1996, must be added to Debra's gross income for that period. We reverse and remand for redetermination of Tim's child support obligation from August 1, 1996 to January 31, 1998.

6. Attorney Fees

[¶ 35] Tim contends the trial court erred in awarding Debra $16,250 in attorney fees and costs because, before *Mahoney II*, the court had already ordered Tim to pay Debra $2,500 in attorney fees. Tim further argues the amount of attorney fees was res judicata because *Mahoney II*, 538 N.W.2d at 197, did not specifically remand the issue of attorney fees to the trial court for determination, while $2,500 in attorney fees had already

been paid to and accepted by Debra. Debra responds the prior award of $2,500 in attorney fees and costs was not res judicata because *Mahoney II* reversed the underlying judgment.

[¶ 36] A judgment generally has no res judicata effect if it has been reversed by an appellate court. 46 Am.Jur.2d, *Judgments* § 593 (1994). An appellate reversal vacates the judgment so that the parties are placed in the same position as before entry of the judgment. *Bergstrom v. Bergstrom*, 320 N.W.2d 119, 122 (N.D.1982). An order dependent on a judgment that is reversed falls with the judgment. *Id.* at 122; 5 C.J.S., *Appeal and Error*, § 960 (1993). As *Bergstrom*, 320 N.W.2d at 122, explained, an award of attorney fees and costs depends on the judgment. Here, the prior award of $2,500 in attorney fees and costs was not res judicata because it was dependent on the underlying judgment we reversed in *Mahoney II*.

[¶ 37] Tim argues his payment and Debra's acceptance of $2,500 in attorney fees, coupled with her failure to present the issue of attorney fees on appeal in *Mahoney II* constituted a waiver of Debra's right to revisit the question of attorney fees. We disagree because the award of attorney fees was inextricably connected to the corrected calculation of Tim's net income on remand, and the ensuing litigation has generated substantial additional attorney fees.[4] As the trial court concluded in a related finding, it was Tim's erroneous calculation of his net income that caused the appointment of the special master on remand to correctly calculate Tim's net income.

[¶ 38] Tim also contends the $16,250 award of attorney fees should be reversed as there are no specific findings evidencing the basis for the award.

4. We have also sharply limited the rule that a party who accepts substantial benefits under a divorce decree waives the right to appeal from the decree. *Smith v. Smith*, 534 N.W.2d 6, 8–9 (N.D.1995) (Accepting monthly spousal support payments does not constitute a waiver of the right to appeal by showing an intention to be bound by the decree; nor is acceptance of spousal support inconsistent with the appellant's claim

she should have been awarded more support); *Bangen v. Bartelson*, 553 N.W.2d 754, 757 (N.D. 1996), quoting 4 Am.Jur.2d, *Appeal and Error*, § 255 (Where the controversy raised by the appeal is confined to the additional amount claimed but not allowed, the appellant is not estopped from taking the appeal by acceptance of the amount allowed).

[¶ 39] The trial court has considerable discretion in formulating an award of attorney fees, and the award will not be overturned unless the appellant affirmatively establishes the trial court abused its discretion. *Quamme v. Bellino*, 540 N.W.2d 142, 148 (N.D.1995). As we said in *Foreng v. Foreng*, 509 N.W.2d 38, 41 (N.D.1993), a trial court abuses its discretion when it acts in an arbitrary, unconscionable or unreasonable manner.

[¶ 40] The principal factors to be considered for deciding the amount of attorney fees are need and ability to pay. *Pozarnsky v. Pozarnsky*, 494 N.W.2d 148, 151 (N.D.1992). "An award of attorney's fees in litigation about marital obligations between former spouses does not depend entirely on the merits of each position, although whether one party's actions unreasonably increased the time and effort spent on the dispute can be a factor." *Id.* at 151.

[¶ 41] Ordinarily, an award of attorney fees requires specific findings. *Van Dyke v. Van Dyke*, 538 N.W.2d 197, 203 (N.D.1995). As we explained in *Van Dyke*, 538 N.W.2d at 203, the award must be supported by evidence of the parties' financial conditions and needs.

[¶ 42] Although we would have preferred more explicit findings, the trial court had much evidence about the disparity in the parties' financial circumstances and was aware of the prior payment of $2,500 in attorney fees. Even with the great disparity in income, the court still only awarded Debra $16,250 of the $24,395 in attorney fees she requested. In deciding to award Debra attorney fees, we believe the court took into account each party's need and ability to pay. *See Foreng v. Foreng*, 509 N.W.2d 38, 41–42 (N.D.1993). We conclude, the court did not abuse its discretion in this award of attorney fees to Debra.

7. Conclusion

[¶ 43] We affirm the trial court's computation of Tim's net income, the award of dependency exemptions, the extension of Tim's spousal support obligation, and the award of attorney fees. We reverse and remand for a redetermination of Debra's gross income so Tim's child support obligation may be properly computed.

[¶ 44] NEUMANN, J., and BURT L. RISKEDAHL, District Judge, concur.

[¶ 45] BURT L. RISKEDAHL, District Judge, sitting in place of MARING, J., disqualified.

VANDE WALLE, Chief Justice, concurring and dissenting.

[¶ 46] Under the facts of the case, and because of a lack of any explanation, I would reverse the trial court on the income tax dependency exemptions.

[¶ 47] Although I agree the trial court may allocate income tax dependency exemptions, the opinion of the trial court does not explain its rationale. The original divorce decree awarded the exemptions to Tim. The modified decree awarded the exemptions for the children living with Debra to her. No explanation is made for the change. The majority rationalizes why the trial court may have made the change, but the trial court has not explained its reasons. I disagree with the suggestion in the majority opinion that the exemption should be used to help Debra's new husband decrease his taxes.

[¶ 48] The fact the trial court may award the exemptions to the noncustodial parent or provide they be retained by the custodial parent does not mean the court may do either upon its whim or caprice. Where, as here, the original exemptions were awarded to Tim the reason for change should be explained by the trial court before we affirm. The original decree did contain the provision "so long as he [Tim] is current in his support obligations." It was suggested at oral argument the change was made because Tim was not current. If so, the trial court should tell us, particularly here where the annual net income of Tim and the annual net income of Debra, as found by the trial court, are so disparate, *i.e.*, $18,200 for Debra and $124,942 for Tim, and the amount of child support Tim was ordered to pay was set at $2,629.00 per month, although we now remand for recalculation of the offset Debra is to pay to

Tim for the child in his custody. I can only conclude Tim is providing a majority of the support.

[¶ 49] We have said several times "[t]rial courts should consider tax consequences when determining divorce transactions." *Kostelecky v. Kostelecky,* 537 N.W.2d 551, 554 (N.D.1995). *See Neubauer v. Neubauer,* 524 N.W.2d 593 (N.D.1994). In the area of tax exemptions for children, we have noted "it may be desirable for a trial court to consider tax consequences, including directions to the parties about allocation of exemptions in connection with the child support provisions." *Gorsuch v. Gorsuch,* 392 N.W.2d 392, 395 (N.D.1986). The tax consequences here obviously favor Tim unless the income of Debra's new husband, "one of the top managers in his company" according to Debra, is considered. But it is Tim, not the new husband, who is responsible for the support of Tim's children and the payments he is required to make in child support are evidence of that obligation. Insofar as Tim, rather than Debra, would benefit from the exemptions and insofar as there is no explanation given for transferring the exemptions to Debra from Tim, I would reverse the trial court on that issue.

[¶ 50] I am concerned about the issues here concerning Tim's net income as outlined in footnote 4 of the majority opinion. However, I do not understand the majority opinion to approve or disapprove of the trial court's adoption of the special master's computations. Rather, we conclude, as we have in numerous other cases, that issues not raised below will not be considered on appeal. I agree with that disposition as well as the disposition by the majority of the other issues, except the income tax exemptions.

[¶ 51] SANDSTROM, J., concurs.